**In re Thomas Dale DAUGHERTY, a/k/a Dale Daugherty, formerly d/b/a Big D Trucking and Daugherty Surface Mining, Debtor.**

**STATE OF TENNESSEE, DEPARTMENT OF CONSERVATION, Plaintiff,**

**v.**

**Thomas Dale DAUGHERTY, Defendant.**

Bankruptcy No. 3–81–01192.
Adv. No. 3–82–0155.

United States Bankruptcy Court,
E.D. Tennessee.

Nov. 26, 1982.

Joseph N. Clarke, Jr., Asst. Atty. Gen., Nashville, Tenn., for plaintiff.

Richard Stair, Jr., Knoxville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

This adversary proceeding involves the issue of whether a judgment representing a civil penalty for violations of the Tennessee Mineral Surface Mining Law of 1972, Tenn. Code Ann. § 59–8–201 et seq. (Supp.1982),[1] is excepted by 11 U.S.C.A. § 523(a)(7) (1979) from a debtor's discharge in bankruptcy.

I

The debtor filed his voluntary chapter 7 petition on July 30, 1981. The plaintiff State of Tennessee filed its complaint on March 2, 1982, requesting an exception from discharge of an indebtedness reduced to judgment and owed by the debtor. There is no factual dispute between the parties.

A Final Order incorporating the following findings was entered by the Davidson County Circuit Court on October 30, 1979. The debtor was engaged in the surface mining of coal almost continually between April 6, 1977, and September 20, 1977, at two sites in Scott County, Tennessee. This mining activity produced the removal of more than 8,954 tons of coal and resulted in

1. This Act was formerly codified as Tenn.Code     Ann. § 58–1540 et seq. (Supp.1979).

surface disturbance of an area covering approximately 10 acres. The debtor engaged in surface mining without obtaining the required permit [2] from the Commissioner of the Department of Conservation. Furthermore, the debtor continued his surface mining operation after the issuance and in defiance of a Cease Order issued on August 24, 1977, until on or about September 20, 1977. The mining activity of the debtor caused environmental damage and was conducted in a manner which makes proper reclamation difficult if not impossible. The debtor avoided substantial monetary expense by operating in a manner which did not comply with the requirements of the Tennessee Mineral Surface Mining Law of 1972.

The October 30, 1979, Final Order also provides that the debtor:

[S]hall pay to the plaintiff a civil penalty of Sixty Thousand Dollars ($60,000) . . . .
2. Within sixty (60) days of the date of entry of this Order the defendants shall submit reclamation plans for the sites involved to the plaintiff in a form suitable to the plaintiff. Said plans shall set forth in detail the measures proposed to be used by the defendants to reclaim the sites to the greatest extent practicable and shall include a schedule showing the minimum time necessary for the expeditious implementation of said reclamation measures . . . .

No payment whatsoever against the judgment indebtedness has been made by either the debtor or his co-defendant, James McCann. The October 30, 1979, Final Order is based on events which occurred more than three years before the date of the filing of the debtor's bankruptcy petition.

## II

The statutory language which the court must interpret is as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

.     .     .     .     .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition . . . .

11 U.S.C.A. § 523(a) (1979).

The judgment at issue is based on former Tenn.Code Ann. § 58–1560 (Supp.1979),[3] which provided in pertinent part:

(a) Any person or operator who violates any of the provisions of §§ 58–1540—58–1564 or regulations adopted pursuant thereto, or who fails to perform the duties imposed by these provisions or fails or refuses to obtain a permit as provided herein, or who violates any determination or order promulgated pursuant to the provisions of §§ 58–1540—58–1564, shall be liable to a civil penalty of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each

---

**2.** Former Tenn.Code Ann. § 58–1544 (Supp. 1979), amended and re-codified as Tenn.Code Ann. § 59–8–205 (Supp.1982), provided in part:

"No operator shall engage in surface mining without having first obtained from the commissioner a permit therefor. This permit shall authorize the operator to engage in surface mining upon the area of land described in his application for a period of one (1) year from the date of its issuance. Such permit shall be granted by the commissioner only if the requirements and criteria set forth in subsections (c) through (i), inclusive, of this section and any rules and regulations pertaining to those requirements are satisfied; and only upon the submission by the operator and approval by the commissioner of a bond as provided in § 58–1546 and a mining and reclamation plan as provided in § 58–1547.

(a) The granting of such permit shall also be subject to payment by the operator of the fee prescribed in § 58–1545 and upon submission of the following information . . . ."

**3.** This statute was effective during the period of the commission of the violations and on the date of the entry of the Final Order assessing the $60,000.00 penalty. The statute has been immaterially amended and re-codified as Tenn. Code Ann. § 59–8–222 (Supp.1982).

day during which such violation continues, and in addition may be enjoined from continuing such violation as hereinafter provided. Such penalties shall be recoverable in an action brought in the name of the state of Tennessee by the attorney-general in the Davidson county circuit court or in the circuit court having jurisdiction of the defendant, and all sums recovered shall be placed in the state treasury and credited to the surface mining reclamation fund.

. . . . .

(d) Nothing in §§ 58–1540—58–1564 shall abrogate the right of any person who is materially or personally damaged or injured by the operation of a surface mine to seek his remedies against the responsible person in the courts.

It is plaintiff's position that the judgment is clearly excepted from the debtor's discharge under § 523(a)(7) because the judgment represents a civil penalty which is not compensatory for any actual pecuniary loss. Plaintiff notes that the October 30, 1979, Final Order required the debtor and his co-defendant to submit a plan of reclamation and to carry out the plan as approved by the State of Tennessee in addition to paying the $60,000.00 penalty.

In support of its position, plaintiff cites *In re Tauscher,* 7 B.R. 918 (Bkrtcy.E.D.Wis. 1981). Civil penalties of $3,100.00, were assessed against the debtor in *Tauscher,* by the United States Secretary of Labor, for violations of the Fair Labor Standards Act prior to his bankruptcy filing. Judge Ihlenfeldt concluded that the penalties were excepted from the debtor's discharge after citing 3 COLLIER ON BANKRUPTCY ¶ 523.17 (15th ed. 1982), which provides in part:

The Bankruptcy Act made no specific provision concerning the dischargeability of fines and penalties due to a governmental unit, but certain principles became well settled in this respect. Fines for violation of law, and forfeiture were not provable and therefore held to be not dischargeable. Generally, fines and penalties were not affected by discharge. By

virtue of the 1966 amendment to section 17a(1) the nondischargeability of tax debts was limited, with certain exceptions, to those becoming due within three years preceding bankruptcy. Those accruing more than three years before bankruptcy were dischargeable.

Subdivision (7) of section 523(a), in contrast to the provisions of section 17a of the Bankruptcy Act, specifically excepts certain fines, penalties, or forfeitures that are payable to and for the benefit of a governmental unit.

The defendant does not controvert the plaintiff's position that the judgment represents the imposition of a civil penalty. However, the defendant asserts that the judgment is nonetheless discharged because it was imposed as a result of events occurring more than three (3) years before the date of the filing of his bankruptcy petition. Defendant interprets subclause (B) of § 523(a)(7) to modify the entirety of clause (7) and requests the court to interpret subclause (B) so as to extend its applicability to non-tax penalties. The judgment indebtedness is dischargeable if defendant's interpretation is correct because the violations on which the judgment is based occurred in 1977, and the defendant's bankruptcy petition was not filed until July 30, 1981.

In reply to defendant's suggested interpretation, plaintiff cites a portion of a joint explanatory statement of the floor managers of the bill which was enacted as the Bankruptcy Code:

The House amendment also adopts the Senate amendment provision limiting the non-dischargeability of punitive tax penalties, that is, penalties other than those which represent collection of a principal amount of tax liability through the form of a "penalty." Under the House amendment, tax penalties which are basically punitive in nature are to be nondischargeable only if the penalty is computed by reference to a related tax liability which is nondischargeable or, if the amount of the penalty is not computed by reference to a tax liability, the transaction or event giving rise to the penalty

.

occurred during the 3-year period ending on the date of the petition.

124 Cong.Rec.H. 11,114 (daily ed. Sept. 28, 1978).

The joint explanatory statement related to § 523(a)(7) of the Code appears to be limited to a discussion of tax penalties. A close reading of the statement is no more helpful in interpreting the statute than reading the text of the statute itself.

The structure of clause (7) of the statute and its subclauses persuades the court to hold that the applicability of the 3-year period of subclause (B) is limited to tax penalties. If Congress had intended otherwise the language of subclause (B) would have either immediately preceded or followed the phrase "not compensation for actual pecuniary loss."

Furthermore, the court's conclusion is supported by the rationale expressed in *In re Abramson,* 210 F. 878 (2d Cir.1914). *Abramson* involved civil penalties imposed by the State of New York against Shavertown Creamery Company, the business name for a partnership between Abramson and Fichhandler. A judgment was obtained by the State on the basis that the partnership had violated a statute by selling skimmed milk without a label designating the milk as skimmed as opposed to pure milk. Thereafter, another action was commenced to recover similar penalties.

Abramson and Fichhandler were subsequently adjudicated bankrupts, on an individual and a partnership basis. They sought to stay the enforcement of the judgment and the prosecution of the pending action against them by the State of New York. Their request was denied on the basis that the civil penalties were nondischargeable.

*Abramson* illustrates the conflict between the provisions of sections 57(j) and 63(a)(1) of the former Bankruptcy Act.[4] Section 57(j) prohibited the allowance of a debt for a penalty or a forfeiture owed to the United States or to any state or any subdivision thereof, except to the extent of the amount of any pecuniary loss incurred as a result of the transaction out of which the penalty or forfeiture arose. On the other hand, section 63(a)(1) provided that a fixed liability evidenced by a judgment owing on the date of the bankruptcy filing could be proved and allowed against the bankrupt's estate. (Only provable debts were dischargeable under § 17(a), 11 U.S.C.A. § 35 (1953), of the former Bankruptcy Act.)

The court of appeals held that the judgment indebtedness for the civil penalties in *Abramson* was nondischargeable. The conclusion of the opinion provides:

> But 57j in favor of the lawmaker further provides that he may recover any pecuniary damage sustained because of the act of violation. Reading the two sections together, we think that judgments for penalties are not debts which can be proved or allowed as such because they are not for a fixed liability, but that any pecuniary loss the lawmaker has sustained by the act out of which the penalty arose, together with actual and reasonable costs and interest, may be proved because of the provision in section 57j. So construed the act is perfectly reasonable. The lawmaker who has suffered no pecuniary loss is not permitted to share in the assets of the estate with creditors who have. On the other hand, bankrupts who have violated laws passed for the public good cannot escape punishment by going into bankruptcy.

*In re Abramson,* 210 F. 878, 880 (2d Cir. 1914).

The record does not reflect that the State of Tennessee has incurred any actual pecuniary loss in this case.[5] The claim of the State should not be allowed to reduce the dividend available to creditors who have sustained actual pecuniary losses, and the debtor should not be permitted to escape liability for violations of a statute enacted

---

4. These sections were respectively codified as 11 U.S.C.A. § 93(j) (1968) and 11 U.S.C.A. § 103(a)(1) (1953).

5. The identity of the owner of the property damaged by the debtor's surface mining operations is not disclosed in the record.

for the environmental welfare, absent a clear Congressional intent to allow the discharge of non-tax penalties imposed as a result of events occurring more than three years before the date of the bankruptcy filing.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.