UNITED STATES of America

v.

Donovan LUEKING d/b/a Lueking Coal Company.

Civ. No. 3–90–377.

United States District Court, E.D. Tennessee, N.D.

Oct. 22, 1990.

**514**

Gerald A. Thornton, U.S. Dept. of the Interior, Knoxville, Tenn., for plaintiff.

John F. Weaver and C. Mark Troutman, McCord, Weaver & Troutman, P.C., Knoxville, Tenn., for defendant.

### ORDER

HULL, Chief Judge.

This is an action to recover civil penalties assessed under the Surface Mining Control and Reclamation Act of 1977 [the Act]. Jurisdiction is predicated on 30 U.S.C. § 1268(d) and 28 U.S.C. § 1355, and is not in dispute. In this lawsuit, the United States claims that defendant Donovan Lueking d/b/a Lueking Coal Co. is liable to it for $158,300.00 in civil penalties, plus prejudgment interest, late-payment penalties, and costs. Defendant Lueking does not deny that the violations occurred or that the penalties were assessed, but denies that he owes any money on the

grounds that the statute of limitations has run; that the doctrine of *res judicata* prevents the United States from collecting due to prior litigation; that the debt was discharged in bankruptcy; and that the United States is guilty of laches. The case is now before the Court on cross-motions for summary judgment.

It is undisputed that Mr. Lueking conducted surface coal mining operations subject to the Act in Morgan County, Tennessee. Following various inspections of this mining operation, the Secretary of the Interior issued certain notices of violations [NOVs] and cessation orders [COs]. Later, for each NOV and CO, a Notice of Penalty Assessment [NOPA] was served on the company. Lueking Coal Company made no attempt to invoke the administrative remedies available to challenge the notices and orders and, eventually, the Office of Surface Mining issued "Final Orders" on behalf of the Secretary assessing civil penalties for each NOV and CO. Lueking Coal Company failed to pay these penalties and this lawsuit ensued.

### THE STATUTE OF LIMITATIONS QUESTION

The parties are in agreement that the general, federal five-year statute of limitations governing the collection of civil penalties, 28 U.S.C. § 2462, is the statute which controls this case. They disagree about when this statute begins to run. Obviously, a cause of action accrues only when it comes into existence as a legally enforceable claim. The United States takes the position that its claims did not accrue until the Secretary issued the Final Orders for each enforcement action. The defendant contends that the claims accrued on the dates of the original COs and NOVs in question. If the defendant is correct, all but three of the eleven civil penalties at issue in this case are time-barred.

Unfortunately, there appear to be no reported cases on point. Two, unpublished, district court cases have been brought to the Court's attention, *United States v. McCune*, No. C–2–87–1387 (S.D.Ohio, December 13, 1989) and *United States v. Gra-*

*ham,* No. 87–1843, 1989 WL 248111 (W.D. Penn., July 20, 1989). Both of these cases are directly on point, meaning that they both involve actions to recover civil penalties assessed under the Surface Mining Control and Reclamation Act of 1977, and both involve situations in which the defendant mining company failed to invoke any administrative relief from the government's enforcement actions. In the *McCune* case, the Ohio district court reasoned that the United States would have no claim upon which it could file suit until the Secretary of the Interior had determined, by his Final Order, that a penalty was due. The Pennsylvania Court, in *Graham,* on the other hand, ruled that, in the absence of clear and convincing evidence of dilatory tactics which would support equitable tolling of the statute of limitations, the government's cause of action first accrued when the original notices of violation and cessation orders were made.

Various Circuit Courts of Appeal have grappled with the question of when the federal five-year statute of limitations, 28 U.S.C. § 2462, begins to run, but these cases have all involved penalty enforcement actions under other federal statutes. And these cases too have produced conflicting rulings. For example, when that statute of limitations is applied to actions to enforce penalties under the Export Administration Act's antiboycott regulations, the First Circuit, in *United States v. Meyer,* 808 F.2d 912 (1st Cir.1987), has held that the limitations period is triggered on the date the civil penalty is administratively imposed, but the Fifth Circuit, in *United States v. Core Laboratories, Inc.,* 759 F.2d 480 (5th Cir.1985), has held that the limitations period begins to run on the date of the underlying violation.

There are a few Supreme Court cases, treating other federal statutes of limitations, which may shed some light on this confused picture. In *Unexcelled Chemical Corp. v. United States,* 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953), which involved an action under the Walsh–Healy Act to recover liquidated damages from a government contractor who had knowingly employed child labor, the Supreme Court held that the cause of action accrued when the minors were employed rather than when the administrative determination of the employer's liability was eventually made. However, in *Crown Coat Front Co. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967), which was an action brought by a government contractor against the United States involving the six-year limitations period in 28 U.S.C. § 2401(a), the Court held that the contractor's cause of action accrued at the termination of the administrative proceedings rather than when the contract was completed. The Supreme Court's ruling in *Crown Coat* turned on the fact that completion of the adjudicatory administrative proceedings was a prerequisite to filing suit in federal court.

There is no such prerequisite under the Surface Mining Control and Reclamation Act and no adjudicatory administrative proceedings take place unless the charged party elects to invoke his administrative remedies. At least in cases like the one before the Court, where the defendant waives any right of review, it would appear that the statute of limitations should run from the time when the government first had notice of the violations and issued its COs or NOVs. Accordingly, the Court FINDS that all but the last three of the eleven civil penalties at issue are time-barred.

### THE RES JUDICATA QUESTION

This instant action was filed on April 2, 1990. It is by no means the first case the Secretary of the Interior has brought against defendant Donovan Lueking or his businesses. On August 22, 1985, the United States filed a complaint, *United States of America v. Whizco, Inc.,* CIV–3–85–823. This complaint was amended on October 8, 1985, to add Mr. Lueking, the owner of Whizco, as an additional defendant. That lawsuit sought injunctive relief against both defendants relating to several violations of the Surface Mining Control and Reclamation Act occurring at coal mines in Scott County, Tennessee. On December 6, 1985, the United States filed another complaint, *United States of America v. Donovan F. Lueking, individually*

*and d/b/a Lueking Coal Company,* CIV–3–85–1194, seeking injunctive relief for two alleged violations of the Act which were occurring at mines in Morgan County. (One of the violations involved in CIV–3–85–1194 gave rise to one of the civil penalties at issue in the present case). Shortly thereafter, on December 10, 1985, the United States filed a motion to consolidate these two actions and this motion was granted. On July 3, 1986, the United States filed a notice of dismissal, pursuant to Rule 41(a)(1)(i), dismissing CIV–3–85–1194 (the action against Lueking and Lueking Coal Company). The *Whizco* action was fully litigated.

Relying on *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), defendant Lueking argues that the final judgment in *Whizco* precludes the United States from relitigating issues that were *or could have been* raised in that action. All of the penalty assessments involved in the instant case had already been made and in every instance the defendant had already waived his right to challenge them before either of the prior actions for injunctive relief were filed. There is no question that the United States could have brought its claims for all the penalties at issue in this case in the two previous actions for injunctive relief.

While the United States acknowledges that it could have brought all of its present claims for penalties in the previous actions for injunctive relief, it denies that it was required to do so. It argues that each enforcement action under the Act is a separate transaction which gives rise to a distinctly different cause of action for civil penalties and there is no requirement that they be brought simultaneously. It also points out that, while the law of the Sixth Circuit is that suits for injunctive relief usually preclude later claims for damages on the same cause of action, *Falls Stamping & Welding v. International Union, UAW,* 744 F.2d 521 (6th Cir.1984), there are exceptions to this general rule when injunctive relief may be sought on an emergency basis.

■ Because there was no apparent emergency about the previous action (one of which the government eventually dismissed), the court FINDS that the government is precluded from now seeking civil penalties for violations actually raised in the earlier lawsuits. However, this ruling appears to preclude only one of the eleven violations at issue in this suit, CO–84–91–10–2. The Court does not find that the United States was required to combine in a single lawsuit, each of its enforcement actions, for separate violations, occurring at separate times in separate locations, and often involving separate business entities.

## THE DISCHARGE IN BANKRUPTCY

■ Defendant Lueking was granted a general discharge in bankruptcy on December 19, 1985. Six of the civil penalties sought in this case were listed in the United States' Proof of Claim filed in that bankruptcy on November 9, 1985, and all of the eleven penalties were final orders, ripe for adjudication, which could have been listed in that claim. The question, then, is whether these penalties fall under the exception to discharge provided in 11 U.S.C. § 523(a)(7), for fines, penalties or forfeitures "payable to and for the benefit of a governmental unit" or whether, as Mr. Lueking contends, the penalties are dischargeable as "compensation for actual pecuniary loss."

The bankruptcy court in *In re Daugherty,* 25 B.R. 158 (Bankr.E.D.Tenn.1982), has held that civil penalties under the Act in question are non dischargeable debts. This Court has made a similar ruling in *United States v. Anderson,* CIV–3–85–08 (June 21, 1985), and has not changed its mind. The civil penalties involved in this suit are clearly penal in nature—the calculation of penalties bears no relationship to the cost of reclaiming the mines; there is no requirement that the penalties collected be used to reclaim a Lueking Coal Company mine; and the government has not suffered any actual pecuniary loss. Accordingly, the exception to discharge provided in 11 U.S.C. § 523(a)(7), applies to the penalties at issue in this case.

## THE DEFENSE OF LACHES

Mr. Lueking's final argument is that the United States is guilty of unconscionable delay in bringing this suit and, therefore, it should be dismissed under the equitable principal of laches. While this Court has agreed with the defendant that all but three of the government's claims are time-barred, it will not dismiss the remaining claims on a laches defense.

## SUMMARY

In summary, judgment is hereby ENTERED in favor of the United States of America and against defendant Donovan F. Lueking with regard to the penalties arising out of NOV–85–91–174–24; NOV–85–91–174–25; and NOV–85–91–174–27; including pre-judgment interest, late-payment penalties and costs.

All claims involving the other eight enforcement actions in this case are DISMISSED as time-barred. In addition, the Court finds that penalties arising out of CO–84–91–10–2 (a violation previously alleged in CIV–3–85–1194) is barred by the doctrine of *res judicata.*