*140
 
 JOHN W. PECK, Senior Circuit Judge.
 

 In 1985, civil penalties totaling $90,350.00 were assessed against WRW Corporation (WRW), a Kentucky corporation, for serious violations of safety standards under the Federal Mine Safety and Health Act (the Act) which resulted in the deaths of two miners. Following the imposition of civil penalties, WRW liquidated its assets and went out of business.
 

 Three individual defendants, who were the sole shareholders, officers and directors of WRW, were later indicted and convicted for willful violations of mandatory health and safety standards under the Act. Roger Richardson, Noah Woolum, and William Woolum each served prison sentences and paid criminal fines. After his release from prison, Roger Richardson filed for bankruptcy under Chapter 7 of the Bankruptcy Code.
 

 The United States (the Government) brought this action in May of 1988 against WRW and Roger Richardson, Noah Woo-lum, and William Woolum to recover the civil penalties previously imposed against WRW. The district court denied the individual defendants’ motion to dismiss and granted summary judgment to the Government, piercing the corporate veil under state law and holding the individual defendants liable for the civil penalties assessed against WRW. The district court also granted summary judgment to the Government on the issue of whether Roger Richardson’s civil liability was discharged in bankruptcy, holding that it was a non-dis-chargeable debt. For the reasons discussed herein, we affirm.
 

 I. Double Jeopardy
 

 The defendants’ unsuccessful motion to dismiss this action was premised upon the argument that the imposition of civil penalties following their criminal convictions amounts to a violation of the Double Jeopardy Clause of the Fifth Amendment, which prohibits the imposition of multiple punishments for the same offense. In
 
 United States v. Halper,
 
 490 U.S. 435, 448-49, 109 S.Ct. 1892, 1901-02, 104 L.Ed.2d 487 (1989), the Supreme Court held:
 

 under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.
 

 The defendants now argue that the district court erred in ruling that
 
 Halper
 
 does not apply.
 

 The
 
 Halper
 
 rule was developed to apply to “the rare case ... where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused.”
 
 Id.
 
 at 449, 109 S.Ct. at 1902. Unlike
 
 Halper,
 
 in this case there is no fixed penalty provision to review but instead we review a civil penalty which was based upon a list of factors. 30 U.S.C. §§ 820(a), 820(i). The defendants argue that the purpose of the Act’s civil penalty provisions is wholly punitive, so that a civil penalty under the Act constitutes an impermissible second punishment when used following a criminal conviction for the same conduct. However, the district court held that the civil penalty provisions serve remedial goals both in general and as applied in the instant case. Our review of the district court’s double jeopardy ruling is de novo.
 
 See United States v. Furlett,
 
 974 F.2d 839, 842 (7th Cir.1992);
 
 United States v. Reed,
 
 937 F.2d 575, 577 n. 4 (11th Cir.1991). Although the instant appeal presents a close case, we agree with the district court that the civil penalty assessed against the individual defendants does not constitute double jeopardy.
 

 The Supreme Court in
 
 Halper
 
 held that the same civil penalty provision may be remedial in general but punitive as applied in an individual case.
 
 See Halper, supra,
 
 490 U.S. at 438, 109 S.Ct. at 1896. However, the Court did not abandon earlier analytical framework used to determine whether a specific penalty provision may be characterized as remedial or punitive in a general sense. Thus, we turn first to
 
 United States v. One Assortment of 89 Firearms,
 
 
 *141
 
 465 U.S. 354, 362-63, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984), where the Court applied the following test for determining whether a civil proceeding is criminal and punitive, or civil and remedial:
 

 First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.... Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.
 

 (quoting
 
 United States v. Ward,
 
 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980)) (citations omitted). In this case, it is obvious that Congress has intended the penalties under 30 U.S.C. § 820(a) to be civil. Not only is the statute so labeled, but the civil provisions are somewhat broader in scope than the criminal provisions. Whereas “willful” violations can be “punished” by a criminal fine or imprisonment under 30 U.S.C. § 820(d), civil penalties may be assessed regardless of fault.
 

 The next step is to determine “whether the statutory scheme [is] so punitive either in purpose or effect as to negate Congress’ intention to establish a civil remedial mechanism.”
 
 One Assortment of 89 Firearms, supra,
 
 465 U.S. at 362-63, 104 S.Ct. at 1105 (citation omitted). Unless the purpose or effect of the civil penalty provisions are shown clearly to be punitive, courts will not “override Congress’ manifest preference for a civil sanction.”
 
 Id.
 
 at 365, 104 S.Ct. at 1106. However, “in determining whether a particular civil sanction constitutes criminal punishment, it is the purpose actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated.”
 
 Halper, supra,
 
 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7.
 

 To assess the purpose of the sanction at hand, we turn to factors first enumerated in
 
 Kennedy v. Mendoza-Martinez,
 
 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) and more recently alluded to in
 
 Halper
 
 as appropriate to determine whether a sanction is civil or criminal.
 

 Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of
 
 scienter,
 
 whether its operation will promote the traditional aims of punishment- retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions, (footnotes omitted).
 

 Id.
 
 372 U.S. at 168-169, 83 S.Ct. at 567-68 (footnotes omitted);
 
 see also Halper, supra,
 
 490 U.S. at 448, 453, 109 S.Ct. at 1901, 1904 (Kennedy, J., concurring). In this case, application of the
 
 Mendoza-Martinez
 
 factors supports the conclusion that the civil penalty is remedial rather than a conclusion that it promotes traditional aims of punishment.
 

 We emphasize that the civil penalty imposed does not involve an affirmative disability or restraint, has not been historically regarded as a punishment, and does not require a finding of scienter. The defendants argue that the imposition of a civil penalty promotes the aims of retribution and deterrence, given the various factors used to determine the amount of the civil penalty.
 
 [1]
 
 However, even though the application of these factors to a given ease may result in a penalty which is punitive, we conclude that imposing a civil penalty for health and safety violations which varies in amount based upon the severity of
 
 *142
 
 the violation and the operator’s attempts to come into immediate compliance may as readily be ascribed to the remedial purpose of promoting mine safety. Although the defendants further argue that their behavior was already a crime under 30 U.S.C. § 820(d), as pointed out above the civil penalty provisions cover a broader range of conduct than the criminal provisions under the Act and are not co-extensive with the criminal provisions. Moreover, it is clear that “ ‘Congress may impose both a criminal and a civil sanction in respect to the same act or omission.’ ”
 
 One Assortment of 89 Firearms, supra,
 
 465 U.S. at 365, 104 S.Ct. at 1106-1107 (quoting
 
 Helvering v. Mitchell,
 
 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938)).
 

 The last of the
 
 Mendoza-Martinez
 
 factors — whether the civil penalty appears excessive in relation to a remedial purpose — drew close scrutiny in
 
 Halper,
 
 where the application of a fixed civil penalty provision resulted in a penalty of $130,-000 even though the Government’s expenses appeared to be no more than $16,-000. However, the fact that the penalty does not compensate the Government for precise actual losses does not preclude it from being remedial in nature. As noted in
 
 Halper,
 
 “the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis.”
 
 Halper, supra,
 
 490 U.S. at 446, 109 S.Ct. at 1900. In addition, the Government’s investigative and prosecutorial costs “must be factored into a determination as to whether the sanction [is] disproportionate to the Government’s loss.”
 
 Id.
 
 at n. 6.
 

 [T]he precise amount of the Government’s damages and costs may prove to be difficult, if not impossible, to ascertain. ... Similarly, it would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment. In other words, ... the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice.
 

 Id.
 
 at 449, 109 S.Ct. at 1902 (citations omitted). It is evident from the opinion of the district court that the court properly focused on these factors in determining that the $90,350 penalty imposed was not so excessive in relation to its remedial purpose as to constitute a second punishment:
 

 Under
 
 Halper,
 
 the civil assessment must be rationally related to the goal of making the United States whole.
 
 Halper, supra,
 
 490 U.S. at 450-51, 109 S.Ct. at 1903. While it is difficult, if not impossible to ascertain the United States’ actual loss due to the defendants’ mine safety and health violations, its losses include the ancillary costs of detection, investigation, and prosecution, that routinely occur as a result of the United States’ enforcement of the Act.
 
 See Halper, supra,
 
 490 U.S. at 444-45, 109 S.Ct. at 1900. The penalty assessment in this action is not so extreme and divorced from the United States’ expenses incurred in the investigation and prosecution of the defendants’ violations to constitute punishment, rather than the remedial goal of ensuring safe mining conditions and practices.
 

 United States v. WRW Corporation,
 
 731 F.Supp. 237, 239 (E.D.Ky.1989).
 

 We agree with the district court’s conclusion in this case, for the reasons stated and because the defendants have not suggested that $90,350 is excessive in relation to the United States’ expenses incurred in the investigation and prosecution of the defendants’ violations. We note that the fact that the Government’s expenses may not have been considered when assessing the amount of the penalty does not alter the objective conclusion by the trial court that the penalty assessed is rationally related to the goal of making the Government whole.
 
 See United States v. Furlett, supra,
 
 974 F.2d at 843-44.
 

 
 *143
 
 II. Piercing the Corporate Veil
 

 Having determined that the imposition of a $90,350 sanction upon the defendants does not violate principles of double jeopardy, we turn to the defendants’ argument that the district court erred in holding the individual defendants liable for the penalty by piercing the corporate veil of WRW under Kentucky law.
 

 The district court held that it was appropriate to pierce WRW’s corporate veil under either an equity theory or an alter ego theory, both of which are recognized under Kentucky law. Under either theory, the following factors must be considered when determining whether to pierce the corporate veil:
 

 (1) undercapitalization; (2) a failure to observe the formalities of corporate existence; (3) non-payment or overpayment of dividends; (4) a siphoning off of funds by dominant shareholders; and (5) the majority shareholders having guaranteed corporate liabilities in their individual capacities.
 

 White v. Winchester Land Development,
 
 584 S.W.2d 56, 62 (Ky.App.1979). The district court considered each of these factors in turn. The court first found that WRW was undercapitalized because it was incorporated with only $3,000 of capital, which the record indicates was insufficient to pay normal expenses associated with the operation of a coal mine. Although the defendants complain that there was no expert testimony on whether WRW was underca-pitalized, it is clear from the record that expert testimony was not required to support the district court’s conclusion in this case, based upon uncontroverted findings by the district court that WRW lacked working capital to pay any employees or expenses, to pay licensing or permit fees, or to obtain adequate mining equipment. Although undercapitalization will not support piercing the corporate veil in every case,
 
 see White, supra,
 
 584 S.W.2d at 62-63, the district court did not err in weighing its significance in this case.
 

 The district court next found that WRW failed to observe corporate formalities, noting that no bylaws were produced by the defendants, and all corporate actions taken by the individual defendants were without corporate authorization. Although the individual defendants allege in their brief that “the record contains clear and unequivocal evidence which would negate a finding” that corporate formalities were not observed, they do not cite any such evidence and apparently failed to do so before the district court. A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to “wade through” the record for specific facts.
 
 InterRoyal Corp. v. Sponseller, 889 F.2d
 
 108, 111 (6th Cir.1989),
 
 cert. denied
 
 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990);
 
 Guarino v. Brookfield Township Trustees,
 
 980 F.2d 399 (6th Cir.1992). The individual defendants do not contest the district court’s additional findings that they commingled funds with WRW, and guaranteed WRW’s liabilities in their individual capacities.
 

 Finally, although WRW never distributed any dividends to the individual defendants, and there was no evidence that the individual defendants siphoned off corporate funds, these factors alone do not mitigate against piercing the corporate veil in this case because WRW was never sufficiently capitalized and operated at a loss during its two years of active existence. To emphasize these two
 
 White
 
 factors under the circumstances would be to hold in effect that courts cannot pierce the veil of insolvent corporations, despite the fact that all other factors favor piercing the corporate veil.
 

 In addition to holding that the equities of this case support piercing the corporate veil, the district court held that the corporate veil should be pierced under the “alter ego” theory, because WRW and the defendants did not have separate personalities. In light of the lack of observance of corporate formalities or distinction between the individual defendants and the corporation, we agree with the district court’s conclusion that “[tjhere was a complete merger of ownership and control of WRW with the individual Defendants.”
 
 United States v.
 
 
 *144
 

 WRW Corporation,
 
 778 F.Supp. 919, 924 (E.D.Ky.1991). Because we affirm summary judgment against the individual defendants on the grounds stated by the district court, we need not and do not reach the Government’s argument that summary judgment should be affirmed because the individual defendants are statutorily liable for the penalty assessed against WRW.
 

 III. Liability in Bankruptcy
 

 Having found that the debt does not violate the Double Jeopardy Clause and that the individual defendants are liable for the civil penalty assessed against WRW, the only remaining issue is whether Richardson’s liability should have been discharged in his personal bankruptcy. 11 U.S.C. § 523 excepts certain debts from discharge in bankruptcy. For example, § 523(a)(7) provides, in relevant part:
 

 (a) A discharge under § 727 ... of this title does not discharge an individual debtor from any debt—
 

 [[Image here]]
 

 (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss....
 

 The district court held that Richardson’s liability for the civil penalties constitutes a non-dischargeable debt under this provision because the debt is for a penalty under the Federal Mine Safety and Health Act, payable to the United States Treasury, and is not compensation for actual pecuniary loss.
 

 Richardson first argues that the district court erred in classifying the debt as one within the purview of § 523(a)(7), because it should have been classified as a claim within the provisions of § 523(a)(2), (4), or (6).
 
 [2]
 
 We disagree. Section 523(a)(2) applies to debts “for money, property, services, or an extension, renewal, or refinancing of creditor,” which have been obtained by false pretenses or actual fraud. Section 523(a)(4) applies to debts “for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny” and was intended to reach “debts arising from the debtor’s acquisition or use of property that is not the debtor’s.”
 
 Matter of Boyle,
 
 819 F.2d 583, 588 (5th Cir.1987). Section 523(a)(6) applies to debts “for willful and malicious injury by the debtor to another entity or to the property of another entity.” Although the applicability of any of these provisions to the debt at issue is far from obvious, Richardson does not elaborate on which if any of these provisions might apply. Instead, he argues principally that the debt is not within § 523(a)(7) because his liability results from piercing the corporate veil rather than from a direct action against him.
 

 We agree with the Government that the nature of Richardson’s liability does not depend on whether it arose through a direct action against him or through a secondary action to pierce the corporate veil, as in this case. Although the party responsible for the debt changed by virtue of this action, the nature of the debt — a fine or penalty — did not change. Because the corporate veil was pierced, Richardson was denied the protection of the corporate shield for his own actions. Thus, the debt was held to be his own, rather than merely a corporate one. As found by the district court, the only provision of § 523(a) which might except the fine or penalty from discharge is § 523(a)(7).
 

 Richardson argues alternatively the debt does not fall within § 523(a)(7) because only penalties which are “not compensation for actual pecuniary loss” are non-dischargeable under that provision. Richardson contends that the district court implied that the civil penalty did compensate the Government for actual pecuniary loss in rejecting the defendants’ motion to dismiss on double jeopardy grounds.
 
 [3]
 

 
 *145
 
 The Government argues that the factors to be considered in assessing penalties under 30 U.S.C. § 820(i) do not relate to any party’s actual pecuniary loss but rather indicate that the penalty is not compensation for actual pecuniary loss, a fact on which the district court relied. Although there are no relevant cases under the Federal Mine Safety and Health Act, a case involving the Surface Mining Control and Reclamation Act of 1977 contains a similar penalty scheme. In
 
 United States v. Lueking,
 
 125 B.R. 513 (E.D.Tenn.1990), civil penalties assessed under the Surface Mining Act were held to be within the 11 U.S.C. § 523(a)(7) exception to discharge.
 
 [4]
 
 In this case, the Government argues that the debt has a remedial, compensatory purpose because it results in rough repayment to the Government of prosecutorial and investigative expenses, but is not compensation for
 
 actual
 
 pecuniary loss because the size of the penalty is not derived from a showing of actual loss. Instead, the penalty amount is based upon factors which focus on the Act’s primary remedial purpose of promoting mine safety. There was no actual pecuniary loss to the Government in this case in the traditional sense, but only prosecutorial and investigative expenses.
 

 We conclude that the penalty at issue is not compensation for actual pecuniary loss even though it is rationally related to the goal of making the Government whole by roughly compensating it for prosecutorial and investigative expenses. Concededly, this is a fine distinction. Had the size of the penalty been calculated according to proof of actual pecuniary loss, it would not be excepted from discharge under § 523(a)(7). On the other hand, had the penalty been more clearly disproportionate to the Government’s investigatory and prosecutorial expenses, it might well have violated double jeopardy. However, because the penalty in question falls within the parameters of “rough justice” permitted under principles of double jeopardy and yet does not compensate the Government for actual pecuniary loss, it is excepted from discharge under 11 U.S.C. § 523(a)(7).
 

 IV. Conclusion
 

 In conclusion, the civil penalty assessed against the individual defendants does not violate double jeopardy, because it is not so excessive in relation to the United States’ investigatory and prosecutorial expenses as to constitute a second punishment. The specific factual findings made by the district court amply support piercing the corporate veil of WRW and holding the individual defendants liable for the penalty assessed against the corporate entity. Finally, the debt as to defendant Richardson was properly excepted from his bankruptcy discharge under 11 U.S.C. § 523(a)(7). For all of the foregoing reasons, the judgment of the district court is AFFIRMED.
 

 [1]
 

 . These factors include:
 

 the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator’s ability to continue in business, the gravity of the violation, and the demonstrated good faith of the operator charged in attempting to achieve rapid compliance after notification of a violation.
 

 30 U.S.C. § 820(i).
 

 [2]
 

 . Unlike debts which fall within § 523(a)(7), debts within § 523(a)(2), (4), or (6) will not be excepted from discharge unless the creditor first files a timely objection to the debtor's discharge.
 

 [3]
 

 . Richardson further asserts that the doctrine of judicial estoppel should apply to bar the Government from arguing that the debt is not compensation for actual pecuniary loss for purposes of § 523, in light of its earlier argument in opposition to the motion to dismiss that the debt
 
 *145
 
 compensates the Government for investigatory and prosecutorial expenses.
 
 See Reynolds
 
 v.
 
 Commissioner of Internal Revenue,
 
 861 F.2d 469 (6th Cir.1988). As explained herein, the Government’s positions are not in conflict; therefore, we do not reach the issue of whether the doctrine of judicial estoppel otherwise would be appropriate.
 

 [4]
 

 . Although the court in
 
 Lueking
 
 described the debt as "penal," that term appears to have been chosen only to indicate that the penalty was not based upon actual pecuniary loss. Double jeopardy was not in issue in
 
 Lueking.