UNITED STATES of America, Plaintiff,

v.

**JBA MOTORCARS, INC. and Jacob Ben–Ari, Defendants.**

No. 92–6376–CIV.

United States District Court, S.D. Florida.

Dec. 3, 1993.

Ariel Poplack, Hollywood, FL, for defendant JBA Motorcars, Inc.

Jacob Ben–Ari, defendant, appearing pro se.

Daniel S. Jacobs, Trial Atty., U.S. Dept. of Justice, Environmental Enforcement Section, Washington, DC, Peter Outerbridge, Asst. U.S. Atty., Miami, FL, and Tiffany Schauer, Atty.–Advisor, U.S. E.P.A., Office of Air and Radiation, Washington, DC, for plaintiff.

*ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER DENYING DEFENDANTS' CROSS–MOTIONS*

HIGHSMITH, District Judge.

This cause comes before the Court upon Plaintiff United States of America's ("United States") Motion for Summary Judgment, filed September 17, 1993, and upon Defendant Jacob Ben–Ari's ("Ben–Ari") Motion for Judgment on the Pleadings and Motion for Summary Judgment, filed October 7, 1993, and joined in by Defendant JBA Motorcars, Inc. ("JBA") on October 15, 1993, and Ben–Ari's Motion to Dismiss, filed September 1, 1993. For the reasons stated below, the Court denies the defendants' cross-motions and Ben–Ari's motion to dismiss, and grants partial summary judgment in favor of the United States.

### INTRODUCTION

The United States Environmental Protection Agency ("EPA") brought this action against JBA and Ben–Ari pursuant to section 205 of the Clean Air Act ("the Act"), 42 U.S.C. § 7524, for alleged violations of section 203 of the Act, 42 U.S.C. § 7522. Section 203 and the regulations promulgated thereunder are designed to ensure that all motor vehicles imported into the United States meet federal emission standards. The Amended Complaint, filed June 23, 1993, alleges that JBA and Ben–Ari failed to comply with the regulations governing the importation and modification of vehicles that did not meet such standards.

### APPLICABLE STATUTES AND REGULATIONS

1. *Importation of Vehicles.*

The Clean Air Act prohibits any "person" from importing or causing to be imported any "new motor vehicle" unless the vehicle is covered by an EPA-issued certificate of conformity. 42 U.S.C. § 7522(a)(1).[1] The Act does, however, allow for a deferment of the final determination as to admission of the imported vehicle pending its being brought into conformity with the emissions standards. 42 U.S.C. § 7522(b)(2). Once the imported vehicle is brought into conformity, it may be admitted upon application to the EPA. 40 C.F.R. § 85.1505(a). Upon the EPA's receipt of the application for admission, a 15–day hold is placed on the vehicle, during which time the vehicle must be stored at a location where an EPA agent will have reasonable access to it for inspection.[2] Admission is deemed granted unless the vehicle holder is notified otherwise by the EPA during the 15–day hold period. 40 C.F.R. § 85.1505(c).

2. *Recordkeeping Requirements.*

The Clean Air Act also mandates that a "manufacturer" establish and maintain records, perform tests, make reports, and provide any information reasonably required by the EPA Administrator necessary to ascertain whether the manufacturer is in compliance with the Act.[3] The Act further mandates that the manufacturer, upon request, shall permit at reasonable times an officer or employee duly designated by the EPA Administrator to have access to and to copy such reports. 42 U.S.C. § 7542(a).

The records currently required by the EPA include, *inter alia*, the following:

(a) a record of having affixed the proper emission and fuel economy labels to the vehicle;

(b) documents providing evidence of the date of original manufacture of the vehicle;

---

1. The definition of "person" as used in the Act includes any individual, corporation, partnership, or association. 42 U.S.C. § 7602(e). With respect to imported vehicles, the term "new motor vehicle" is defined as any motor vehicle manufactured after September 25, 1987—the effective date of the regulations promulgated under 42 U.S.C. § 7521, *et seq.* 42 U.S.C. § 7550(3).

2. The official date of notification to the EPA upon which the 15–day hold period begins to run

is the date of acceptance of the application by EPA's computer if the application is electronically forwarded, or the date on the certified mail receipt if the application is made on an EPA form. 40 C.F.R. § 85.1505(c).

3. The definition of "manufacturer" under the Act encompasses any person engaged in the importation of new motor vehicles for resale. 42 U.S.C. § 7550(1).

(c) a written report containing the information required by regulation;

(d) an application containing the information required by regulation; and

(e) documents providing evidence of the initiation of the "15–day hold" period for each applicable vehicle.

40 C.F.R. § 85.1501 *et seq.* The Act makes it unlawful for any person to: (1) fail or refuse to permit access to or copying of such records; (2) fail to make reports or provide the information required by the EPA; or (3) fail or refuse to permit entry onto the manufacturer's premises, testing of vehicles, or inspection of the facilities and records. 42 U.S.C. § 7522(a)(2)(A)–(C).

### 3. *Penalties.*

Any person who violates § 7522(a)(1) of the Act is subject to a civil penalty of not more than $25,000 for each violation. Violators of § 7522(a)(2) are subject to a civil penalty of not more than $25,000 per day of violation. For those violations occurring prior to November 15, 1990, the maximum penalty is $10,000. 42 U.S.C. § 7524. In assessing a penalty, the following factors must be considered: (1) the gravity of the violation; (2) the economic benefit or savings (if any) resulting from the violation; (3) the size of the violator's business; (4) the violator's history of compliance with the Act; (5) action taken to remedy the violation; (6) the effect of the penalty on the violator's ability to continue in business; and (7) such other matters as justice may require. 42 U.S.C. § 7524(b).

### STANDARD OF REVIEW

In deciding a summary judgment motion, the Court must apply the standard set forth in *Fed.R.Civ.P.* 56(c), which states in relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The United States Supreme Court has addressed the standard for summary judgment, as set forth in Rule 56(c), as follows:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). ▪ After the moving party has met this initial burden, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). *Fed.R.Civ.P.* 56(e), however, does not permit the nonmoving party to avoid summary judgment by resting on the pleadings, but "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, the mere existence of a scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

### UNDISPUTED FACTS

▪ Preliminarily, the Court notes that the undisputed facts as developed below are based, in part, on the United States' Request For Admissions, served on the defendants via mail on July 30, 1993. Pursuant to Fed. R.Civ.P. 36(a), a "matter is admitted unless, *within 30 days after service of the request* [for admission], the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, ..." (emphasis added). The defendants failed to respond to the request for admissions within the allotted time frame. In fact, the defen-

dants failed to respond even though the United States sent a cover letter with their request for admissions clearly explaining to the defendants the rule regarding admissions, including the penalty for failure to timely respond. In addition, the Court warned the defendants in an order dated August 30, 1993, that "it will not countenance further violations of the rules of this Court." Despite these warnings, the defendants failed to file a response to the request for admissions until *45 days* after the time for responding had elapsed. No leave of court was sought for this delay. Therefore, each matter raised in the United States' request for admission, dated July 30, 1993, is deemed conclusively established for the purposes of this action. Fed.R.Civ.P. 36(b).

The Court also relies on the United States' Statement of Material Facts as to which there is no genuine issue to be tried, filed September 17, 1993, in support of its motion for summary judgment. Rule 7.5 of the Local Rules for the United States District Court for the Southern District of Florida provides that "all material facts set forth in the statement [of material facts as to which there is no dispute] required to be served by the moving party will be deemed admitted unless controverted by the opposing party's statement [of material facts as to which it is contended that there exists a genuine issue to be tried]." On October 7, 1993, six (6) days late and without leave of court for such delay, Ben–Ari filed his Motion for Judgment on the Pleadings and Motion for Summary Judgment in response to the United States' summary judgment motion. A concise statement of disputed facts was not filed in rebuttal to the United States' motion. Nor did the defendants file their own concise statement of undisputed facts in support of their cross-motion for summary judgment. Instead, Ben–Ari, in his own affidavit submitted with the cross-motion, averred that "all of the factual matters contained in said pleadings are true and correct." Nevertheless, a review of Ben–Ari's response indicates that the material facts set forth by the United States in its motion are not contested. Based on these considerations, the undisputed facts are as follows:

1. JBA is a defunct corporation established and existing under the laws of the State of Florida, which operated a business in Deerfield Beach, Florida, and was engaged in the importation of new motor vehicles for resale.

2. Ben–Ari was president of JBA and was personally responsible for all aspects of the day-to-day operations of JBA.

3. At the time of the violations alleged in the Amended Complaint, each of the defendants was a "person" within the meaning of section 203(e) of the Act and also, a "manufacturer" who imported "new motor vehicles" within the meaning of section 216 of the Act.[4]

4. On March 8, 1989, an EPA agent conducted an inspection at JBA, which included a review of JBA's records. A second inspection was conducted on July 10, 1991. As a result of these inspections, the EPA found instances of noncompliance with the Act's requirements as to the following imported vehicles: 1988 Mercedes–Benz 300SE, vin # WDB1260241A427607 ("vehicle # 1"); 1988 Mercedes–Benz 300SE, vin # WDB1070411A086185 ("vehicle # 2"); 1988 Mercedes–Benz 190E, vin # WDB2010291A434293 ("vehicle # 3"); 1983 BMW 735i, vin # WBAFH810007686133 ("vehicle # 4"); 1987/88 Mercedes–Benz 500SEC, vin # WDB1260441A398878 ("vehicle # 12"); 1987/88 Saab 9000i, vin # YS3CC55D7H1024890 ("vehicle # 13"); 1989 Mercedes–Benz 230E, vin # WDB1240231A943196 ("vehicle # 14"); 1988 Mercedes–Benz 420SEL, vin # WDB1260351A440528 ("vehicle # 15"); 1988 Mercedes–Benz 300E, vin # WDB1240301A758560 ("vehicle # 16"); 1985 Mercedes–Benz 500SEC, vin # WDB1260441A196966 ("vehicle # 17"); 1986 Mercedes–Benz 300SE, vin # WDB1260241A199401 ("vehicle # 18").

5. The defendants eventually corrected the violations pertaining to vehicles # 1 through # 3.

---

**4.** The Court notes that in the Joint Pretrial Stipulation signed by the parties and filed with the Court on October 25, 1993, Ben–Ari and JBA admit they are "persons" within the meaning of the Act. The stipulation further admits that JBA was a "manufacturer."

6. The defendants also never sent the EPA final admission application forms by certified mail. Ben–Ari Deposition, Vol. IV, October 11, 1993, p. 324.

7. On July 8, 1991, an EPA agent presented herself at JBA, identified herself as an EPA agent, and sought to conduct an investigation of JBA and, particularly, its records. An agent/employee of JBA refused to allow the EPA agent to conduct the investigation. The EPA agent returned on July 10, 1991, and, at that time, was allowed to conduct the investigation.

## DISCUSSION

### 1. Compliance.

 The Clean Air Act imposes a strict liability standard for assessing compliance violations. *United States v. Tzavah Urban Renewal Corp.,* 696 F.Supp. 1013, 1020 (D.N.J.1988). The Act and the regulations promulgated thereunder explicitly mandate the procedures to be followed in importing motor vehicles for resale and the documentation to be kept regarding each importation. A review of the undisputed facts reveals that Ben–Ari and JBA have not demonstrated a genuine issue for trial with regards to the alleged importation and recordkeeping violations. Therefore, the Court finds that Ben–Ari and JBA have failed to comply with the procedures mandated by the statute and the regulations promulgated thereunder.

### 2. Liability.

 Because the Court finds that JBA has violated the Act, and that a strict liability standard applies, the Court further finds that JBA, as a corporate entity, is indisputably liable for those violations. The remaining issue, therefore, is whether Ben–Ari, as president of JBA, may be held personally liable for the violations. In order for the Court to hold Ben–Ari personally liable, it must first determine whether JBA's corporate veil has been pierced.

 Generally, the corporate veil is pierced where "such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and an inequitable result will follow if the acts are treated as those of the corporation alone." *RRX Indus., Inc. v. Lab–Con, Inc.,* 772 F.2d 543, 545 (9th Cir.1985). Factors to be considered in piercing the corporate veil include, *inter alia,* failure to observe corporate formalities, nonpayment of dividends, nonfunctioning of other officers or directors, absence of corporate records, and fact that corporation is merely a facade for operations of dominant stockholder. *Solomon v. Klein,* 770 F.2d 352, 353–54 (3d Cir. 1985).

In the instant case, JBA was incorporated merely in order for Ben–Ari to obtain funds from a Harry Berkthold ("Berkthold") to pay off a debt owed to a company from which Ben–Ari had purchased equipment. Ben–Ari Deposition, Vol. IV, October 11, 1993, p. 210. Ben–Ari issued stock certificates to Berkthold which Ben–Ari signed as both president and secretary, even though he had just filed Articles of Incorporation with the State of Florida naming an Ellen McClintick as the secretary of JBA. *Id.* at 209–10. According to Ben–Ari, Berkthold would only provide the funds on the condition that Ben–Ari create a corporate entity other than the one he had earlier created, JBA Emission Laboratories, in order to preclude his partner from that venture in having any stake in the new company. *Id.* at 210–11. This was the sole reason that Ben–Ari founded JBA. *Id.* at 211.

Furthermore, Ben–Ari testified that JBA had no Board of Directors and that the vice-president and the treasurer of JBA held their offices in name only—that they really "didn't do nothing." *Id.* at 214, 217–18. Moreover, Ben–Ari treated the corporation's assets as his own, routinely using one of its cars as a personal vehicle. *Id.* at 226–27.

Finally, in a hearing before the Court on December 15, 1992, Ben–Ari testified that "all this complaint that is against JBA, its not actually JBA—its Jacob Ben–Ari—because I was the mind of the corporation. I prepared all the paperwork and signed them. I did all those certifications for vehicle[s] in

this case.". Transcript of December 15, 1992 hearing, p. 5.[5]

Based upon this record, the Court concludes that JBA's corporate veil has been sufficiently pierced such that Ben–Ari is personally liable for any civil penalties imposed against JBA for violations of the Act. Ben–Ari's own testimony makes it apparent that a complete merger of ownership and control of JBA with Ben–Ari occurred such that JBA was, in fact, Ben–Ari. JBA did not observe any corporate formalities and its officers were nonfunctioning. Also, Ben–Ari was actively involved in the violations that occurred. Moreover, the Court finds that if the violations of the Act were attributable to JBA alone, which is now defunct, an inequitable result would follow as JBA has no assets adequate to pay any civil penalty that might be assessed against it. *United States v. WRW Corp.,* 778 F.Supp. 919 (E.D.Ky.1991), *aff'd,* 986 F.2d 138 (6th Cir.1993). Finally, Ben–Ari has admitted that he is both a "person" and a "manufacturer" as defined by the Act and is therefore subject to the Act's provisions. Ben–Ari cannot now hide behind his defunct corporation to escape liability for his actions.

### 3. *Assessment of Penalty.*

 In their pleadings, motions, and response to the United States' motion for summary judgment, the defendants have attempted to set forth reasons why the violations at issue occurred. Although the defendants did not explicitly address the penalties to be assessed or the factors to be applied in making the assessment, the Court finds that the arguments raised by Ben–Ari and JBA and the facts addressed in their pleadings and motions present a question of fact with regard to the issue of penalties. The Court finds that these reasons, if true, should be considered in assessing an appropriate penalty. Therefore, the issue of penalties is reserved for trial.

### CONCLUSION

The United States has demonstrated that there is no genuine dispute as to any *material* fact on the issue of liability. Ben–Ari and

JBA, on the other hand, have failed to demonstrate by more than conclusory allegations or denials that there is a genuine issue for trial. The question of penalties to be assessed for the defendants' violations, however, is still at issue and would be better addressed at trial. For these reasons, it is hereby

ORDERED AND ADJUDGED as follows:

1. Plaintiff United States' Motion for Summary Judgment is GRANTED IN PART.

2. Partial Summary Judgment of liability be, and the same is hereby entered in favor of the United States of America and against JBA Motorcars, Inc. and Jacob Ben–Ari.

3. Defendant Jacob Ben–Ari's Motion for Judgment on the Pleadings and Motion for Summary Judgment, filed October 7, 1993, and joined in by Defendant JBA Motorcars, Inc. on October 15, 1993, are DENIED.

4. Defendant Jacob Ben–Ari's Motion to Dismiss Amended Complaint, filed September 1, 1993, is DENIED.

DONE AND ORDERED.

---

**5.** JBA has since been dissolved, with its only remaining assets being equipment originally purchased for approximately $180,000, of which Mr. Berkthold owns 90%.