**Richard E. BUNGER and REB of Florida, Inc., Plaintiffs,**

v.

**Jack M. HARTMAN and Texaco, Inc., Defendants.**

**No. 91–14199–CIV.**

United States District Court, S.D. Florida.

June 5, 1992.

Roy Jordan, Jr., West Palm Beach, Fla., and Jeff Harmon of Cors & Bassett, Cincinnati, Ohio, for plaintiffs.

Kirk Burns, Miami, Fla., for Texaco, Inc.

Jordan Fields, of Fields & Wilkinson, P.A., Stuart, Fla., for Jack M. Hartman.

## ORDER ON MOTIONS TO DISMISS

PAINE, District Judge.

This matter comes before the court on the Defendant's, Texaco, Inc. ("Texaco"), Motion to Dismiss (DE 7) and the Defendant's, Jack M. Hartman ("Hartman"), Amended Motion to Dismiss (DE 11). Having reviewed the record, the memoranda of counsel and relevant authorities, the court enters the following order.

### Background

According to the Plaintiffs, Richard E. Bunger ("Bunger") and REB of Florida, Inc. ("REB"), Texaco operated, from 1965 to 1984, a gasoline service station and bulk petroleum storage facility at 728 North Federal Highway in Stuart, Florida. Thereafter, Texaco assigned its lease to Hartman who remained in possession until the Plaintiffs took control of the property in 1984. During this period, the Defendants allegedly dumped and spilled petroleum and other products which ultimately migrated through the underlying soil and groundwater.

In September of 1988, the properties' contamination was discovered by the Plaintiffs who reported it to the Florida Department of Environmental Regulation ("DER"). DER, in turn, required the Plaintiffs to conduct tests on the property and prepare a Contamination Assessment Report ("CAR").[1] On September 20, 1991, Bunger and REB commenced this action

1. Paragraphs 43 and 44 of the Complaint state:
43. The tests conducted on the Property by plaintiffs indicate the presence of elevated levels of various contaminants including but not limited to, benzene, ethylbenzene, toluene, xylene, lead, oil and grease. Benzene, ethylbenzene, toluene, xylene, and lead are hazardous substance under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq.
44. The tests and analyses conducted for plaintiff have revealed significant groundwater contamination on the Property consisting of parameters from the gasoline (leaded and unleaded) and kerosene groups in excess of Florida Administrative Code (F.A.C.) 17–770 Site Rehabilitation Levels.

seeking recovery of costs incurred in conducting tests, preparation of the CAR, as well as, future costs related to remediation of the property.[2]

*Motions to Dismiss: Legal Standard*

Pre–Answer Motions, such as a Motion to Dismiss for Failure to State a Claim or a Motion for More Definite Statement, may raise two distinct issues: (1) whether the Plaintiff has stated his or her purported claim with sufficient detail; and (2) whether the claim as stated is recognized by law.

As to the first issue, that is, factual detail, the Federal Rules of Civil Procedure are very liberal. Rule 8(a) provides that the Complaint need only contain "a short and plain statement of the claim...." "All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food & Commercial Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir.1989) (collecting cases). The parties may, through discovery, inquire further into the details underlying the claim. *Bazal v. Belford Trucking Co., Inc.*, 442 F.Supp. 1089, 1102 (S.D.Fla.1977); *see generally* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1202 (2d ed. 1990).

The instant Motion, however, concerns the latter issue: the viability of the Plaintiff's cause of action. In this regard, the court must first accept all of the allegations in the Complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Thomas v. Burlington Industries, Inc.*, 769 F.Supp. 368, 370 (S.D.Fla.1991). Consideration of matters beyond the four corners of the Complaint is improper, *Milburn v. United States*, 734 F.2d 762 (11th Cir.1984); *Thomas*, 769 F.Supp. at 370, and a Motion to Dismiss should not be granted unless the Plaintiff can prove no set of facts in support of his claim entitling him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Thus, a Complaint may not be dismissed because the Plaintiff's claims do not support the legal theories on which he relies because the court must determine if the allegations form a basis for relief on any possible theory. *See Robertson v. Johnston*, 376 F.2d 43 (5th Cir.1967).[3]

*CERCLA and Private Cost Recovery Actions*

Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA" or "Act"), 42 U.S.C. §§ 9601–9657, to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." Pub.L. No. 96–510, 94 Stat. 2767 (1980). In furtherance of these objectives, a bifurcated mechanism was created to promote the cleanup of waste sites, spills and hazardous substances released into the environment: The federal government was empowered to respond to environmental hazards through the creation of Superfund, 42 U.S.C. §§ 9604–05, 9611–12, while private parties were permitted to institute actions to recover "response costs" for the cleanup of sites from those responsible for the hazard, 42 U.S.C. § 9607(a).

42 U.S.C. § 9607(a) delineates who may commence a private cause of action under CERCLA and the types of damages recoverable. It provides:

(a) Notwithstanding any other provision of rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or facility,

(2) any person who at the time of disposal of any hazardous substance owned

---

**2.** Of the thirteen causes of action contained in the Complaint, counts I through VII set forth common law claims against HARTMAN. The parties have stipulated to sever and dismiss Counts I through VII as they will be tried in a related state court proceeding (DE 15).

**3.** The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which cause the incurrence of response costs, of hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 104(i).

The present Motions do not present a challenge to the Plaintiffs' standing to bring this action; rather, dismissal of the Complaint is sought because of two alleged pleading deficiencies. First, the Defendants argue that CERCLA does not apply since "hazardous substances" are not involved, that is, waste allegedly dumped or spilled is either petroleum or a fraction thereof, substances excluded from the Act's coverage. Second, Texaco and Hartman contend that Bunger and REB's Complaint is deficient as they have failed to allege consistency with the National Contingency Plan.

## Hazardous Substances and the Petroleum Exclusion

A private party must prove four elements before they can prevail in a cost recovery action: (1) the site where the "hazardous substance" is found is a "facility," as per CERCLA's definition of that term, 42 U.S.C. § 9601(9); (2) there has been a "release" or "threatened release" of a "hazardous substance" from the facility, 42 U.S.C. § 9607(a)(4); (3) the "release" or "threatened release" has caused the private party to incur "response costs" that were "necessary" and "consistent with the national contingency plan," 42 U.S.C. § 9607(a)(4)(A) and (B); and (4) the Defendants fall within one the four classes of parties subject to the liability under the Act. *3550 Stevens Creek Assoc. v. Barclays Bank*, 915 F.2d 1355, 1358 (9th Cir. 1990); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir.1989). Although the allegations necessary to state a cost recovery action under CERCLA presents a matter of first impression in this Circuit, the undersigned believes that each element of proof must be alleged in the Complaint.

■ The question raised by the Defendants' first ground for dismissal requires resolution of a more rudimentary issue: What is a hazardous substance? For guidance the court looks to 42 U.S.C. § 9601(14), that portion of the Act which defines "hazardous substances." It includes:

(A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to 9602 of this title; and (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act (but not including any waste the regulation of which under the Solid Waste Disposal Act has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clear Air Act, and (F) any imminently hazardous chemical sub-

stance or mixture with respect to which the Administrator has taken pursuant to section 2606 of Title 15. *The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas liquids, liquified natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas).*

42 U.S.C. § 9601(14) (emphasis added).

The underscored portion of Section 9601(14) has been interpreted as creating a "petroleum exclusion" which has been applied by the Environmental Protection Agency ("EPA")[4] and federal courts "to remove from the coverage of CERCLA those otherwise hazardous substances which are *inherent* in petroleum, but not hazardous substances that are added to, or mixed with, a petroleum product during or after use." *Niecko v. Emro Marketing Co.*, 769 F.Supp. 973, 981 (E.D.Mich.1991) (emphasis in original). *See Wilshire Westwood Assoc. v. Atlantic Richfield Corp.*, 881 F.2d 801, 805 (9th Cir.1989);[5] *United States v. Western Processing Co., Inc.*, 761 F.Supp. 713 (W.D.Wash.1991); *United States v. Alcan Aluminum Corp.*, 755 F.Supp. 531, 539 (N.D.N.Y.1991); *New York v. Exxon Corp.*, 744 F.Supp. 474, 489–90 (S.D.N.Y.1990); *Washington v. Time Oil Co.*, 687 F.Supp. 529, 531–32 (W.D.Wash.1988).

In the present case, the Plaintiffs allege that tests conducted on the property have revealed various contaminants including, among other things, "benzene, ethylbenzene, toluene, xylene, lead, oil and grease." Benzene, toluene, ethyl toluene, xylene and lead are otherwise "hazardous substances" as they have been either specifically listed or designated pursuant to several of the statutes set forth in section 9601(14)(A)–(F). But each are also inherent, indigenous components of crude oil and gasoline and, therefore, excluded from CERCLA coverage, if their origin in the subsurface was related to the release of "petroleum ... or any fraction thereof." *Wilshire*, 881 F.2d at 803–05; *Niecko*, 769 F.Supp. at 982.

A fair reading of the Plaintiffs' Complaint leads to the inescapable conclusion that the "hazardous substances" discovered on the site were derived from the petroleum products which were stored and sold by Texaco and Hartman. The pleading identifies no other viable sources of the pollutants and contaminants.[6] According-

---

**4.** The Environmental Protection Agency has concluded that the "petroleum exclusion" applies to all kinds of petroleum products. 50 Fed.Reg. 13,460 (1985).

**5.** The *Wilshire* panel held that the petroleum exclusion applied not only to indigenous components of unrefined and refined gasoline, but also to additives added during the refining process. *Wilshire*, 881 F.2d at 810.

**6.** For example, paragraphs nine and seventeen of the Complaint provide:

9. Shortly after entering into the lease agreement, Texaco, Inc. began operating on the Property a gasoline service station and bulk petroleum storage facility for the wholesale distribution of petroleum products including but not limited to leaded and unleaded gasoline, diesel fuel, kerosene, aviation gasoline and jet fuel. Additionally, Texaco, Inc. stored waste motor oil, lubricating greases and virgin motor oils on the property. (All of the items mentioned in this paragraph are collectively referred to herein as "petroleum products" and in some cases "pollutants" and "contaminants".)

17. Defendants, TEXACO, INC. and JACK M. HARTMAN caused the contamination on the Property through their acts and omissions, including, but not limited to the following:
(1) failing to properly and adequately monitor, maintain and operate the tank systems on the property that leaked petroleum products on the Property;
(2) failing to properly and adequately monitor, maintain and operate the waste oil tank and soakage pit on the Property that leaked used oil and possibly other contaminants on the Property;
(3) overspilling petroleum products on the Property while filling tanks from tanker trucks and while loading tanker trucks;
(4) draining water, kerosene, aviation fuel and jet fuel from the above ground tank systems onto the property;
(5) storing oil drums on their side and draining the residual oil from the drums onto the Property;
(6) allowing leaking drums to leak oil onto the Property;
(7) draining crankcase oil from trucks and equipment and otherwise dumping oil on the Property;

ly, Counts VIII through XIII should, and by the same are, dismissed without prejudice. The Plaintiffs shall have eleven (11) days from this date in which file an Amended Complaint. This pleading should give an indication as to which hazardous substances were found on the site, whether they are inherent in petroleum, and if possible, their sources.[7]

### National Contingency Plan

■ Pursuant to 42 U.S.C. § 9607(a)(4)(A) and (B), one who violates CERCLA is liable for private party response costs to the extent that the costs were incurred consistent with the "national contingency plan." The national contingency plan ("NCP") is a set of regulations promulgated by the EPA that establish procedures and standards for responding to the release of hazardous substances and sets up a process for the evaluation and selection of remedies prior to actual cleanup of a waste site. *Channel Master Satellite v. JFD Electronics Corp.*, 748 F.Supp. 373, 382 (E.D.N.C.1990); *See* 42 U.S.C. § 9605. Its purpose "is to give some consistency and cohesiveness to response planning and actions." H.R.Rep. No. 96–1016, 96th Cong., 2d Sess., part I at 30 (1980) U.S.Code Cong. & Admin.News pp. 6119, 6113.

■ As noted previously, compliance with the NCP is one of the factors which a private litigant must establish before they may recover from those responsible for the creation of an environmental hazard. *Ascon*, 866 F.2d at 1152; *County Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1513 (10th Cir.1991); *Versatile Metals, Inc. v. Union Corp.*, 693 F.Supp. 1563, 1579–83 (E.D.Pa. 1988). This element of proof, therefore, must be alleged in a cost recovery action under CERCLA. Since Bunger and REB's Complaint fails to do so, this portion of the Defendants' Motions to Dismiss also has merit.

In view of all the foregoing, it is hereby ORDERED and ADJUDGED that

(1) the Defendant's Motion to Dismiss (DE 7) is GRANTED.

(2) the Defendant's Amended Motion to Dismiss (DE 11) is GRANTED.

(3) Counts VIII–XI of the Plaintiffs' Complaint (DE 1) are DISMISSED WITHOUT PREJUDICE. The Plaintiffs shall have eleven (11) days from this date in which to file an Amended Complaint in accordance with this Order. In doing so, the Plaintiffs' counsel are reminded of the affirmative duties of good faith imposed by Rule 11 of the Federal Rules of Civil Procedure.

DONE and ORDERED.

---

(8) allowing petroleum products to discharge from vent lines of the underground storage tank system which Texaco, Inc. improperly designed, installed and maintained.

**7.** Whether the Plaintiffs can sustain their ultimate burden of proof on this matter is a question left for another day.