**BERMAN ENTERPRISES, INC.; General Marine Transport Corporation; Standard Marine Services, Inc.; Jane Frank Kresch, as Secretary of Berman Enterprises; Evelyn Berman Frank, as Chief Executive Officer of General Marine Transport Corporation and as an Officer of the other named corporations; and Peter M. Frank, as President of General Marine Transport Corporation, Plaintiffs–Appellants,**

v.

**Thomas C. JORLING, in his individual capacity and in his official capacity as Commissioner of the New York State Department of Environmental Conservation; and Langdon Marsh, in his individual capacity and in his official capacity as Executive Deputy Commissioner of the New York State Department of Environmental Conservation, Defendants–Appellees.**

No. 443, Docket 92–7680.

United States Court of Appeals,
Second Circuit.

Argued Dec. 14, 1992.

Decided Aug. 24, 1993.

Christopher Carpentieri, New York City (Stults, Balber, Horton & Slotnik, of counsel), for plaintiffs-appellants.

Gregory J. Nolan, Asst. Atty. Gen. for State of N.Y. (Robert Abrams, Atty. Gen., Jerry Boone, Sol. Gen., of counsel), for defendants-appellees.

Before: CARDAMONE and PRATT, Circuit Judges, and MORRIS E. LASKER, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

Plaintiffs appeal from a judgment of the United States District Court for the Eastern District of New York, Jack B. Weinstein, *Judge,* that dismissed their amended complaint, which challenged summary abatement orders issued by defendants under New York Environmental Conservation Law § 71–0301. *Berman Enterprises, Inc. v. Jorling,* 793 F.Supp. 408 (E.D.N.Y.1992). The orders prohibited plaintiffs from operating some of their oil and sludge barges in New York Harbor. The district court dismissed the complaint on multiple grounds. We affirm, on grounds of qualified immunity and abstention.

## BACKGROUND

Plaintiffs—three corporations and three of their officers—operate oil-carrying and sludge-carrying barges in various areas, including New York harbor. The orders at issue treated plaintiffs as a single business run by the Berman and Frank families and drew no distinctions between or among the individual plaintiffs and the corporate plaintiffs. Hereinafter, plaintiffs are referred to as "Berman".

Defendant Thomas Jorling is Commissioner of the New York State Department of Environmental Conservation ("DEC"). Defendant Langdon Marsh is Executive Deputy Commissioner of the DEC. Berman sued both Jorling and Marsh in their individual and official capacities.

In late September 1990, one of Berman's barges sank in the Arthur Kill at Staten Island, New York, spilling both oil and sludge into the water. Three weeks later Jorling, acting under N.Y.Envtl.Conserv.Law § 71–0301 (McKinney 1984), issued a summary abatement order, which is the principal target of this lawsuit. By that order Jorling (1) immediately suspended the petroleum-facility licenses for 14 of Berman's barges, (2) required Berman to empty all cargo from the barges, and (3) ordered that the barges "shall remain docked and shall not be operated in the New York Marine district".

The specific barges involved are identified in the summary abatement order as "listed by number in Appendix 1". Appendix 1 was not, however, supplied to this court as part of either the parties' joint appendix or the record on appeal filed with the clerk. While there are disputes over many of the circumstances affecting individual barges, those disputes do not affect the outcome of this appeal, and the absence of Appendix 1 from the record does not prevent our deciding this case.

Section 71–0301 requires that a summary abatement order provide the target of the order with an opportunity for a hearing within 15 days. Accordingly, Jorling's October 18, 1990, order scheduled a hearing for October 30, 1990, to address the merits of the summary abatement order as well as revocation of the 14 petroleum-facility licenses that DEC had previously issued to Berman's barges under New York's Navigation Law. *See* N.Y.Nav.Law § 174 (McKinney 1989); 17 N.Y.C.R.R. § 30.10(b).

Berman immediately commenced an action in the United States District Court for the Southern District of New York, John E. Sprizzo, *Judge,* seeking to enjoin enforcement of any provisions of New York's Environmental Conservation Law, the Navigation Law, or the summary abatement order that would prevent Berman from operating its 14

barges that comply with federal law. Berman's claim was grounded in 42 U.S.C. § 1983 and advanced arguments based on the supremacy clause, the commerce clause, and the fourteenth amendment.

On October 30, 1990, Judge Sprizzo refused to interfere with the state's proposed hearing, and seven days later the parties stipulated to discontinue the Southern District action. Berman's claims under the supremacy clause and commerce clause were discontinued with prejudice; its claims under the fourteenth amendment were discontinued without prejudice.

The hearing went ahead before an administrative law judge ("ALJ") of the DEC's Office of Hearings, Edward Buhrmaster, and testimony was taken on various days over the course of the next month. After post-hearing memoranda were submitted, the hearing record was closed on January 22, 1991. In a 60–page, single-spaced decision the ALJ resolved most of the factual and legal issues against Berman. He concluded with four recommendations:

(1) The 14 major-facility licenses that had been suspended should be revoked.

(2) The summary abatement order issued by Jorling should be continued without modification.

(3) Modifications proposed by the staff to allow for limited operation of the barges should be rejected.

(4) The summary abatement order should not be broadened to incorporate four other barges owned by Berman, because those barges were not named in the order, and the request to incorporate them was made after the evidentiary record was closed.

Under the procedure established by the DEC, the ALJ's report and recommendations were to be reviewed and acted upon by the commissioner. *See* 6 N.Y.C.R.R. § 622.14 (final determination and order). Commissioner Jorling, however, had disqualified himself from any further participation in the proceeding and had delegated his responsibilities to Executive Deputy Commissioner Marsh.

By decision dated March 25, 1991, Marsh reviewed Berman's objections to the ALJ's report and recommendations and entered a final order that followed the recommendations. Specifically, Marsh found that Berman operated roughly 30 vessels in the New York harbor area, including oil barges, sludge barges, and tugs; that the several corporations acted under the common management of the Berman and Frank families; that over the previous 11 years the 14 vessels that were the subject of the summary abatement order had "compiled records of chronic non-compliance with state and federal regulations which are designed to protect the environment, public health and safety"; that the vessels had received various citations from the United States Coast Guard for both administrative and safety violations; that some of the violations had involved serious injury or loss of life or environmental damage; that there were some documented incidents of pollution in New York harbor in which no violations were cited; that some of the violations and pollution incidents were the direct result of improper management by Berman; that the "sheer number of violations and pollution incidents and their duration for over a period of eleven years is * * * noteworthy"; that Berman had presented no information as to efforts it had undertaken over the previous 11 years to implement programs of preventive maintenance or inspections, to improve management, or otherwise to address the cause of the problems; and that there was no explanation as to why Berman experienced such difficulty in complying with the Coast Guard's safety regulations.

On the summary abatement issue, Marsh concluded that "the continued operation of these vessels by the Respondents carries with it a substantial risk that these and other incidents will reoccur"; that the nature of Berman's business and a survey of the incidents caused by its operations in the past "demonstrate the potential for creating serious environmental and safety hazards"; that "continued operation of the fleet of vessels by these Respondents carries with it a serious risk of harm"; and that the harm is "imminent" and "potentially quite serious".

With respect to the suspended licenses, Marsh found that revocation of the 14 licenses was required because "continued operation of the barges represents a menace to the New York harbor environment".

Finally, Marsh ordered that the summary abatement order was "confirmed in whole and extended"; that "no modification to such Order is granted"; and that the 14 "major facility licenses" were revoked.

Berman then brought this action against both Jorling and Marsh. Its first five causes of action, brought under 42 U.S.C. § 1983, sought damages against Jorling and Marsh in their personal capacities for substantive and procedural due process violations; the sixth sought declaratory relief that the defendants' orders are unconstitutional; and the seventh sought attorneys fees and costs. The eighth and ninth causes of action, advanced under the court's supplemental jurisdiction, 28 U.S.C. § 1367, sought to vacate the decision and order of defendant Marsh under Article 78, N.Y.Civ.Prac.L. & R. §§ 7801–7806 (McKinney 1981), as being arbitrary and capricious and as lacking substantial evidence.

On defendants' motion under rules 12(b)(1) and (6), Fed.R.Civ.P. 12(b)(1), (6), Judge Weinstein dismissed the complaint on multiple grounds. In a scholarly analysis, he rejected Berman's contention that federal law preempted state authority to bar Berman's barges from operating in New York harbor. Further, he found that Berman's entire complaint was barred by the eleventh amendment; that both Jorling and Marsh enjoyed qualified immunity; and that dismissal was also warranted under *Burford* abstention and *Pullman* abstention. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

The district court did not expressly dispose of Berman's two claims under Article 78; implicitly, however, it declined to exercise supplemental jurisdiction and dismissed them. As had been revealed at oral argument on the motion to dismiss, those claims could still be asserted in state court, since the statute of limitations had been tolled under New York law by the bringing of this suit.

## DISCUSSION

Preliminarily, we agree with Judge Weinstein's rejection of Berman's claim that federal law preempts any state regulation of Berman's barges in New York harbor. As to the remainder of the appeal, we affirm the judgment of the district court on the combined grounds of qualified immunity and abstention, but the district court's rulings regarding the eleventh amendment and *Pullman* abstention require clarification.

### A. Eleventh Amendment.

Berman asserted his § 1983 claims against Jorling and Marsh in both their individual and official capacities. To the extent that the suit sought damages from defendants in their official capacities, dismissal under the eleventh amendment was proper because a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred. *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). However, the eleventh amendment does not extend to a suit against a state official in his individual capacity, even when the conduct complained of was carried out in accordance with state law. *Hafer,* —— U.S. at ——, 112 S.Ct. at 364–65. Judge Weinstein concluded that the state is the real party in interest in this case. We disagree. The complaint specifically seeks damages from the defendants in their individual capacities and the mere fact that the state may reimburse them does not make the state the real party in interest. Whether or not a state would choose to reimburse an official for damages for constitutional harm he caused in his individual capacity is a matter of no concern to a federal court.

Nor was Berman's claim for declaratory relief barred by the eleventh amendment. Under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be the subject of injunctive or declaratory relief in federal court. *Kentucky*

*v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

To the extent, therefore, that Berman sought (a) damages against defendants in their individual capacities and (b) declaratory relief vacating the defendants' two orders, its claims were not barred by the eleventh amendment. This does not mean, however, that the court's ultimate disposition of the action was wrong. Both the damage claims and the declaratory judgment claim fail for different reasons: qualified immunity and abstention, respectively.

*B. Qualified Immunity.*

Under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and its progeny, public officials have immunity from liability for damages under § 1983 when their "conduct does not violate clearly established * * * rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. When Jorling and Marsh acted, the law governing their conduct was not "clearly established"; therefore, both defendants are entitled to qualified immunity from the claims against them in their individual capacities.

The essence of Berman's claims is that by issuing the summary abatement order and the final order the defendants exceeded their authority under state law and thereby deprived Berman of property without due process. The critical issue then is whether the commissioners had the authority to issue the abatement orders and to revoke the licenses. The answers require extensive interpretations of state statutes and regulations, application of those statutes and regulations to facts before the commissioners, and an evaluation of the potential harm that would result in the absence of abatement.

Superficially, at least, defendants' conduct here followed the provisions of the New York statutes; both summary and final abatement orders are authorized, *see* N.Y.Envtl.Conserv.Law § 71–0301; 6 N.Y.C.R.R. § 622.-14(a), as are revocations of the vessel licenses, *see* N.Y.Nav.Law § 174; 17 N.Y.C.R.R.

§ 30.10. Nothing the defendants did is expressly prohibited under state law. Underlying every one of Berman's claims is its assertion that Jorling and Marsh went too far in enforcing New York's rules against polluting rivers. Most particularly, Berman attacks the abatement orders on the ground that they were directed against the business itself, rather than against a particular, imminent hazard to the environment. This claim, as Judge Weinstein commented below, raises "unresolved and difficult questions of state law" of which "[t]he state courts have not had occasion to provide an authoritative interpretation". *Berman Enterprises,* 793 F.Supp. at 414.

We agree that the parameters of the commissioners' powers under the statutes and regulations is not well defined or easily understood. Certainly, it cannot be said it is "clearly established" that they lacked the authority to act as they did. If Jorling was empowered to issue the summary abatement order, Berman's suit collapses. While the commissioners' claim to power is plausible, there is no clear indication in the statutes or regulations that the specific action taken here was authorized, and there are no cases ruling on the point. In short, the extent of the commissioners' authority is not yet clearly delineated. Even if it should ultimately turn out that they exceeded their authority, the uncertainty of their authority under New York law protects them from liability for damages in this suit under the doctrine of qualified immunity.

Marsh is more clearly entitled to qualified immunity than Jorling, for his actions followed a more clearly defined statutory path. Marsh's conduct involved reviewing the ALJ's findings and recommendations and making a final determination of the abatement order and licensing revocations. On the legal side, he stands in no weaker position than Jorling: abatement and license revocation are both contemplated by statute. On the factual side, Marsh did not act summarily as did Jorling; instead, he had an extensive record to work with, plus findings and recommendations by the ALJ. Exercising his statutorily based executive power in

these circumstances was, therefore, protected by qualified immunity.

To this point we have established that Berman's claims against Jorling and Marsh are barred by the eleventh amendment insofar as they are asserted against them in their official capacities, and by qualified immunity insofar as they are asserted for damages against them in their individual capacities. What remains are Berman's claims for declaratory relief and Article 78 relief, on which the district court abstained.

### C. Abstention.

█ The district court concluded that dismissal was proper under both *Pullman,* 312 U.S. 496, 61 S.Ct. 643, and *Burford,* 319 U.S. 315, 63 S.Ct. 1098. Ordinarily, dismissal is not the proper result of *Pullman* abstention. Instead, the district court should stay the federal proceedings to permit the parties to resolve in state court the difficult issue of state law. Then either the federal case would be mooted, or the parties might return to federal court to resolve the remaining federal issues in light of the then established state law.

█ Here, however, no federal damage claims remain. The only unresolved federal claim is for a declaration as to whether the abatement orders and license revocations are valid, and that issue turns on state law. Once the state court resolves that issue there will be nothing left to litigate in federal court. Thus, dismissal of the federal claim in its entirety was appropriate.

The district court correctly perceived that the centrality of the state-law dispute over the extent of the commissioner's power called for abstention. Retaining jurisdiction for a later disposition, however, would not have made any sense, because whichever way the state-law issue might be resolved, Berman's § 1983 claim against the commissioners would fail. If the state court should determine that the commissioners had authority to issue the abatement orders, then Berman suffered no constitutional harm. On the other hand, if the state court should determine that they lacked that authority, while Berman might have suffered a constitutional harm, the commissioners' qualified immunity would bar any monetary recovery because, as we have already indicated, until the state court has ruled on the issue it cannot be said that their lack of authority was "clearly established".

█ We also agree with Judge Weinstein that *Burford* abstention, which does require dismissal, is appropriate here. As contemplated by federal law, states are given considerable leeway in protecting the purity of their own waters. *See* Federal Water Pollution Control Act, 33 U.S.C. § 1321(*o* )(2). New York, through a combination of statutes and regulations under the Environmental Conservation Law and the Navigation Law, has established a complex, even bewildering, system for regulating such matters as oil and sewage pollution. In a case such as this, where the decisive issue hinges entirely on the proper meaning and reach of those state statutes and regulations, a federal court should abstain in favor of the state's interpreting its own law.

Upon oral argument of the motion before Judge Weinstein, it was established that Berman had brought this action within the period for commencing a state-court Article 78 proceeding, and that the state statute of limitations is tolled until this action is finally disposed of. Since our disposition of Berman's state Article 78 claims, as well as its § 1983 claim for declaratory relief, is dismissal for lack of jurisdiction, Berman is still able to pursue those claims in state court, provided it moves promptly—perhaps even before the mandate is issued from this court.

The judgment of the district court is affirmed.