**DIVERSIFIED SERVICES,
INC., Plaintiff,**

**v.**

**SIMKINS INDUSTRIES, INC.,
et al., Defendant.**

**No. 94–0217–CIV.**

United States District Court,
S.D. Florida.

March 26, 1997.

David Peter Charles Ashton, Robert Mark Brochin, Richard A. Pettigrew, Morgan Lewis & Bockius, Miami, FL, for Diversified Services, Inc.

Stephen Ross Verbit, Ruden McClosky Smith Schuster & Russell, Fort Lauderdale, FL, Jill Nexon Berman, Berman, Wolfe & Rennert, P.A., Miami, FL, Scott Daryl Lieberman, Wilson Elser Moskowitz Edelman & Dicker, Miami, FL, Rudolph F. Aragon, Paul Joseph Schwiep, Ava Janine Borrasso, Atagon Burlington Weil & Crockett, Miami, FL, for Simkins Industries, Inc.

Stephen Ross Verbit, Earl Blank Kavanaugh & Stotts, Miami, FL, Rudolph F. Aragon, Paul Joseph Schwiep, Ava Janine Borrasso, Atagon Burlington Weil & Crockett, Miami, FL, for Leon Simkins.

Rudolph F. Aragon, Paul Joseph Schwiep, Atagon Burlington Weil & Crockett, Miami, FL, for Steven F. Gadon, Ronald Simkins.

## ORDER AFFIRMING MAGISTRATE'S REPORT AND RECOMMENDATION

FERGUSON, District Judge.

**THIS CAUSE** is before the Court on the Defendant Simkins Industries, Inc.'s motion to dismiss the plaintiff's amended complaint (D.E.28) and motion for partial summary judgment (D.E. 57), and the Plaintiff Diversified Services, Inc's motion for partial summary judgment (D.E.42).

**THESE MATTERS** were referred to the Honorable William C. Turnoff, United States Magistrate Judge. A Report and Recommendation dated November 27, 1995 has been filed, recommending that the Defendant Simkins' motion to dismiss (D.E.28) be DENIED as to Counts I, II and VII and GRANTED as to Counts III, IV, V and VI; the Defendant Simkins' motion for partial summary judgment (D.E.57) be DENIED; and the Plaintiff Diversified's motion for partial summary judgment (D.E.42) be GRANTED. The Court having considered the objections to the report and the pertinent portions of the file, it is

**ORDERED AND ADJUDGED** that United States Magistrate Judge William C. Turnoff's Report and Recommendation of November 27, 1995 is AFFIRMED.

## REPORT AND RECOMMENDATION

TURNOFF, United States Chief Magistrate Judge.

This Cause has been referred to the undersigned United States Magistrate Judge by the Honorable Wilkie D. Ferguson, Jr., United States District Court Judge, for a

Report and Recommendation in accordance with 28 U.S.C. § 636(b). Under consideration are Defendant Simkins Industries, Inc.'s *Motion to Dismiss Plaintiff Diversified Services, Inc.'s Amended Complaint* (D.E.28), *Motion for Partial Summary Judgment* (D.E.57) and Plaintiff Diversified Services, Inc.'s *Motion for Partial Summary Judgment and Supporting Memorandum* (D.E.42).

## FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 1994, Plaintiff Diversified Services, Inc. ("Diversified") filed an Amended Complaint against Defendant Simkins Industries, Inc. ("Simkins") and others alleging that Simkins released hazardous substances on real property leased by Diversified from Simkins. Diversified alleges that the hazardous substances on the property originated from Simkins' prior use of the property.

Simkins has owned the subject property located in Miami, Florida since approximately 1940. Up until 1987, Simkins operated a paperboard and cardboard box manufacturing plant on said property. Simkins also maintained aboveground and underground storage tanks which contained diesel oil, fuel oil, and leaded gasoline. *Amended Complaint* (D.E. 7 at ¶ 16).

In November 1987, Simkins entered into a "net net net lease" with Diversified whereby all ownership responsibility for the leased property was transferred to Diversified. From November 1987 until July of 1988, Diversified operated a rental car facility on the leased premises. In July 1988, Diversified began excavating on the leased premises in order to install underground storage tanks for the storage of unleaded gas and an oil/water separator. During the excavation process, two old and corroded fuel storage tanks were discovered. The Dade County Department of Environmental Resources Management ("DERM") was immediately notified of Diversified's discovery.

In September 1988, DERM tested the area which contained the corroded storage tanks and discovered the existence of possible die-sel fuel. In addition, Diversified's consultants tested the excavated soils and discovered elevated levels of lead and chromium as well as other hazardous substances. These tanks were subsequently removed by Diversified.

In April 1989, DERM again inspected the property and discovered continuing contamination problems in both the soil and the groundwater. The contaminants DERM found to be present included petroleum hydrocarbons, chlorinated hydrocarbons, oil, grease, diesel fuel and lead.

Diversified has complied with all state and county regulations in remedying the hazardous waste problem on the leased property. Diversified alleges that it has spent approximately $1,180,000 in investigation and remedial activities on the leased premises.

Diversified and Simkins are in disagreement as to who is responsible for the environmental clean-up costs on the property pursuant to the subject lease and applicable law. Each believes that the other is responsible for the costs associated with the investigation and clean-up of the property. Unable to resolve the issue of whom should pay the clean-up costs, Diversified filed the instant action.

In its Amended Complaint, Diversified alleges seven causes of action against Simkins. Counts I and II are claims for cost recovery and contribution under §§ 107 and 1113(f) of the Comprehensive Environmental Response, Compensation and Liability Act of 1986 (hereinafter "CERCLA"), 42 U.S.C. §§ 9601–9626. Counts III through VI are claims seeking recovery costs and contribution under Florida law.[1] Count VII seeks a declaratory judgment as to the parties' rights and obligations under the lease with respect to the environmental condition, investigation, assessment and clean-up of the property.

Both parties have moved for partial summary judgment as to whether the lease requires Diversified to remove any contamination from the property and whether the lease provides for indemnification. In addition,

---

1. Counts III and IV seek recovery costs and contribution under § 376.313(3), Fla.Stat. Count V is a contribution claim under § 768.31, Fla. Stat., and under Florida common law. Count VI is a contribution claim under § 403.727, Fla. Stat., for clean-up costs.

Simkins moves to dismiss Counts III–VI of the Amended Complaint, for failure to state a cause of action for which relief can be granted and for lack of subject matter jurisdiction.

## ANALYSIS

### I. Summary Judgment as to Count VII

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary Judgment may be entered only where there is no genuine issue of material fact. Moreover, the Supreme Court has noted that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.

In the instant case, the issue presented by the motions for summary judgment is one of contract interpretation. As such, it is particularly susceptible to determination as a matter of law. *See Quesada v. Director*, 577 F.Supp. 695, 697 (S.D.Fla.1983), aff'd, 753 F.2d 1011 (11th Cir.1985).

Diversified seeks partial summary judgment finding that the lease does not hold Simkins harmless from any costs or expenses associated with the environmental contamination that existed prior to the effective date of the lease. Simkins, on the other hand, seeks summary judgment finding that the lease requires that Diversified assume all ownership responsibility for the property, including removal of contaminates from the property and indemnification for any costs Simkins has or will incur related to the environmental contamination.

■ Although the Eleventh Circuit, is silent as to the propriety of indemnification agreements in CERCLA cases, other circuits have clearly Established that private parties may allocate between themselves the costs of clean-up associated with hazardous waste.

*See Joslyn Mfg. Co. v. Koppers Co., Inc.*, 40 F.3d 750 (5th Cir.1994); *Fisher Development Co. v. Boise Cascade Corp.*, 37 F.3d 104 (3d Cir.1994); *Kerr–McGee Chem. Corp. v. Lefton Iron and Metal Co.*, 14 F.3d 321, 327 (7th Cir.1994); *Niecko v. Emro Marketing Co.*, 973 F.2d 1296 (6th Cir.1992); *Mardan Corp. v. C.G.C. Music Ltd.*, 804 F.2d 1454 (9th Cir.1986). Whether a specific contract provides for indemnity vis-a-vis CERCLA liability is determined by state rather than federal law. *See Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206 (3d Cir.1994); *John S. Boyd Co., Inc. v. Boston Gas Co.*, 992 F.2d 401 (1st Cir.1993); *Commander Oil Co. v. Advance Food Serv. Equip.*, 991 F.2d 49 (2d Cir.1993); *United States v. Hardage*, 985 F.2d 1427, 1433 (10th Cir.1993).

■ Under Florida law, indemnification agreements are not favored and are strictly construed. Florida law dictates that contracts which attempt to indemnify a party against its own wrongful conduct will be enforced only if they express an intent to indemnify in clear and unequivocal terms. *Cox Cable Corp. v. Gulf Power Co.*, 591 So.2d 627, 629 (Fla.1992); *Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co.*, 374 So.2d 487, 489 (Fla.1979).

In the instant case, Simkins contends that the contract read as a whole allocates responsibility for environmental clean-up to Diversified. As additional support for its allegations, Simkins specifically relies on paragraphs 2 and 16.B of the lease. Paragraphs 2 and 16.B of the lease provide:

*2. Site Preparation*

The premises consist of parking areas, a two story office, warehouse and open air storage building to be site prepared by Lessor in accordance with Exhibit "C", attached hereto and made a part hereof. Lessee hereby acknowledges that the requirements set forth in Exhibit "C" have been satisfied in full by Lessor ...

EXHIBIT "C"

SITE PREPARATION

1. ~~Remove asbestos and all other harmful materials or pollutants of which Lessor has knowledge.~~ 2. ~~Demolish papermill buildings but leave concrete pads in place in as~~

is condition after demolition. Open land has been reasonably flatten. [This section was crossed out and initialed by the parties.]

3. Cooling and plumbing in main building will be free of any leaks and is in working condition.

4. Roof will be free of any leaks.

16. *PUBLIC AUTHORITY REQUIREMENTS*

B. (1) Lessee represents and warrants that Lessee shall promptly meet, comply with, and conform to any covenants, conditions and restrictions of record, as set forth on Exhibit "E", to all applicable insurance regulations, and to all local, state and federal ordinances, codes, laws, rules, and regulations pertaining to and including, but not limited to zoning, occupation, health, safety, fire and building standards affecting the same for so long as Lessee shall continue to use the Premises.

(2) Lessee agrees to hold Lessor harmless and free from any costs or expenses which may be incurred due to the covenants made by Lessee in Subsection B(1) hereof as a Lessee; the use of the Premises for purpose other than that as stated hereinabove, or an illegal act or failure to act on the part of the Lessee.

A plain reading of the entire lease reveals that it does not contain an express declaration to transfer liability for environmental contamination. Nor does the text of the lease indicate an intention of the parties to allocate CERCLA type liability. Indeed the lease is silent as to responsibilities for environmental contamination and past conduct in disposing of hazardous substances.

Simkins, however, contends that such an intention can be inferred from Diversified's obligation to comply with all federal and state regulations as provided for in Paragraph 16. Simkins argues that such an obligation indicates Diversified's clear intent that it would be responsible for all environmental clean-up costs. In this regard, Simkins relies on the Ninth Circuit's holding in *Jones–Hamilton Co. v. Beazer Materials and Ser-*

vices Inc., 959 F.2d 126, 129 (9th Cir.1992) that held a contractual provision similar [2] to Paragraph 16.B to require indemnification from CERCLA liability. However, *Jones–Hamilton* is of little guidance here, because the Ninth Circuit's holding was based on California state law rather than Florida's law requiring an unequivocal expression of an intent to indemnify. Thus, Simkins' reliance on *Jones–Hamilton* is unavailing.

In the instant case, Paragraph 16 relates only to Diversified's obligation to conduct its business in compliance with the law. It contains no expression of an obligation upon the tenant to indemnify the landlord for existing environmental liabilities. Moreover, as a remedial statute that establishes liability for existing contamination, CERCLA is not a "requirement" of the law that requires affirmative action. *See United States v. Fleet Factors Corp.*, 901 F.2d 1550, 1557 (11th Cir.1990); *Hudson Ins. Co. v. American Elec. Corp.*, 748 F.Supp. 837, 843 (M.D.Fla. 1990) The remedial environmental laws in this action are designed to hold polluters responsible and are not "legal requirements" for a tenant to comply with. Such broad covenants to comply with all federal regulations cannot be read to constitute a clear obligation on behalf of Diversified to bear the costs of environmental pollution caused prior to its entering the lease.

Finally, Simkins points to extrinsic evidence showing that the parties crossed out terms of Exhibit C, paragraph 2. The omitted paragraph stated that Simkins would remove asbestos and other harmful materials or pollutants of which Simkins had knowledge. Simkins argues this deletion indicates the parties' intent that Diversified would hold Simkins harmless from any response costs connected with the removal of any harmful material or pollutants existing on the property.

The undersigned finds that deletion of the one section that would have held Simkins responsible for the removal of known hazardous wastes does not act to transfer

---

**2.** The relevant contract provision in *Jones–Hamilton* provided: "J–H agrees to comply with all applicable Federal, State and Local laws, ordinances, codes, rules and regulations and to in-

demnify [Plaintiff] against all losses, damages and costs resulting from any failure of J–H or any of its employees, agents or contractors to do so." *Id.*

that responsibility to the other party. The strict construction and clarity required of indemnity agreements do not allow such a transfer. *Cf. Haynes v. Kleinewefers and Lembo Corp.*, 921 F.2d 453, 456–57 (2d Cir. 1990); *Mobay Corp. v. Allied–Signal Inc.*, 761 F.Supp. 345, 355 (D.N.J.1991) (holding that because the indemnity clause contains no provision mentioning the assumption of environmental type liabilities the clause cannot be construed as a clear transfer of CERCLA liability).

Based on the foregoing, the undersigned finds that the lease does not unequivocally demonstrate an unmistakable intent on Diversified's behalf to indemnify Simkins for costs that it has or will incur related to environmental contamination of the property. Thus, Diversified's Motion for Partial Summary Judgment on this issue should be granted and Simkins' cross-motion should be denied.

## II.   Defendants' Motion to Dismiss

### A.   Legal Standard

It is axiomatic that a court shall not grant a motion to dismiss unless it appears beyond doubt that a claimant can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In examining a motion to dismiss, the court is confined to a review of the pleadings, must accept the pleaded facts as true, and must resolve any factual issues in a manner favorable to the non-moving party. *See Burch v. Apalachee Community Mental Health Servs.*, 840 F.2d 797, 798 (11th Cir. 1988) (citation omitted), *aff'd*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Colonial Penn Ins. Co. v. Value Rent–A–Car, Inc.*, 814 F.Supp. 1084, 1090 (S.D.Fla.1992). Thus, a claim is subject to dismissal under Rule 12(b)(6) only if it is clear that no relief

could be provided consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A plaintiff need only provide a short and plain statement of the claim showing that he is entitled to relief. Fed.R.Civ.P. 8(a)(2).

### B.   Counts I and II

In its motion to dismiss, Simkins alleges that Counts I and II of the Amended Complaint are barred by CERCLA's exclusion for petroleum products. Congress enacted CERCLA to "provide for liability compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." Pub. L.No. 96–510, 94 Stat. 2767 (1980). To this end, Congress defined the term "hazardous substance" in 42 U.S.C. § 9601(14). The definition specifically excludes petroleum, including crude oil or any fraction thereof.[3] This exclusion has been construed by federal courts "to remove from the coverage of CERCLA those otherwise hazardous substances which are *inherent* in petroleum, but not hazardous substances that are added to, or mixed with, a petroleum product during or after use." *Bunger v. Hartman*, 797 F.Supp. 968, 972 (S.D.Fla.1992) (quoting *Niecko v. Emro Marketing Co.*, 769 F.Supp. 973, 981 (E.D.Mich.1991)).

In the instant case, tests conducted on the property have revealed various contaminants including among other things, leaded gasoline constituents, four forms of chlorobenzenes, petroleum hydrocaroons, chlorinated hydrocarbons, PCBs, oil, grease, diesel fuel, chromium and lead. *See Amended Complaint* (D.E. 7 at ¶¶ 15, 16, 23, 24, 27, 36, 37 and 39). Each of these substances, individually, is a hazardous substance according to

---

**3.**   In particular, CERCLA states:

The term [hazardous substance] does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied nature gas, or synthetic gas usable for fuel or mixtures of natural gas and such synthetic gas.

42 U.S.C. § 9601(14). This "petroleum exclusion" covers all forms of petroleum and applies to other substances that are hazardous substances under CERCLA but are indigenous to petroleum or are added to the petroleum during the refining process. *Southern Pacific Transp. Co. v. California (Caltrans)*, 790 F.Supp. 983 (C.D.Ca.1991).

CERCLA. However, each of these substances is also an inherent component of petroleum. *Wilshire Westwood Assoc. v. Atlantic Richfield Corp.*, 881 F.2d 801, 803–05 (9th Cir.1989); *Niecko v. Emro Marketing Co.*, 769 F.Supp. 973, 982 (E.D.Mich.1991). Thus, Simkins argues that the substances found on the leased property are either a petroleum product or a fraction thereof and are thus excluded from CERCLA coverage.

■ Diversified responds that several of the hazardous substances are from nonpetroleum related sources, and that such substances are merely commingled with the petroleum. Thus, Diversified argues that the petroleum exclusion does not apply. Such arguments necessarily ask this Court to determine if the origin of the hazardous substances was petroleum related or from another source. If the hazardous substances were clearly from no other source than petroleum products, it is proper to dismiss Plaintiff's CERCLA counts on a motion to dismiss. *Bunger*, 797 F.Supp. at 972. If, however, Plaintiff has alleged other sources of the pollutants or the source is unclear, dismissal at this stage in the proceedings is inappropriate. *See e.g., id.* at 974; *Portsmouth Redev. & Hous. Auth. v. BMI Apts. Assoc.*, 827 F.Supp. 354, 356 (E.D.Va.1993) ("the petroleum exclusion itself presents a uniquely fact dependant question").

In its Amended Complaint, Diversified alleges that Simkins maintained several above and below ground storage tanks that contained diesel oil, fuel oil, and leaded gasoline. *Amended Complaint* (D.E. 7 at ¶ 16). Diversified also contends that Simkins released hazardous substances onto the property in connection with its waste paper pulping and paperboard manufacturing plant which contaminated site soils and groundwater. *Amended Complaint* (D.E. 7 at ¶ 15). Plaintiff also alleges that it was advised by DERM that contaminants, including PCBs and dioxin, were identified and appeared not to be associated with fueling activities. *Id.* at ¶ 33. Diversified further alleges that one area "OU–1" was contaminated by gasoline combined with pre-existing groundwater contamination and another area "OU–2" contains contaminates not related to the fueling system but to Simkins' industrial operations. *Id.* at ¶ 36.

■ Although Diversified admits that much of the environmental waste is the result of petroleum contamination, it sufficiently alleges other sources of contamination and that commingling occurred. Accepting Diversified's allegations as true, this Court cannot accept Simkins' allegation that the hazardous wastes on the property are the product of nothing other than petroleum contamination. Thus, the undersigned cannot determine, on this record, whether the hazardous wastes are related to a release of petroleum products or another source. Such a determination is better left to the trier of fact, after complete discovery has been taken. Thus, Counts I and II should not be dismissed.

### C. *Counts III through VI.*

Counts III through VI of the Amended Complaint are claims for recovery costs and contribution under several state statutes and Florida common law. Simkins moves to dismiss these claims because the counts fail to state a claim or because Florida law does not recognize the stated causes of action. This Court, however, initially must determine whether to exercise its supplemental jurisdiction over the remaining state claims.

■ An analysis of modern common law pendent jurisdiction doctrine begins with *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "Under *Gibbs*, it is within the district court's discretion to exercise pendent jurisdiction over state law claims if the court has jurisdiction over a substantial federal claim and the federal and state law claims 'arise out of the same nucleus of operative facts and are of such a nature that a plaintiff would be expected to try them all in the same proceedings.'" *Edwards v. Okaloosa County*, 5 F.3d 1431, 1433 (11th Cir.1993). Pendent jurisdiction is a "doctrine of discretion," that need not be exercised in every case and is not a plaintiff's right. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

■ In deciding whether to exercise pendent jurisdiction, a district court should consider factors such as judicial economy, convenience, fairness, comity, whether state issues would predominate, and potential jury confu-

sion. *Edwards,* 5 F.3d at 1433. The Judicial Improvements Act of 1990, codified in 28 U.S.C. § 1367, outlines a district court's supplemental jurisdiction over pendent or ancillary claims and is similar to the common law pendent jurisdiction doctrine. It provides that the district court may decline to exercise supplemental jurisdiction if the claims raise novel or complex issues of state law or if the claims substantially predominate over the claims over which the district court has original jurisdiction.

■ The undersigned notes that although both the federal and state claims in the instant case revolve around alleged hazardous waste contamination, to prevail under the state claims would require different elements of proof than the CERCLA claims which confer jurisdiction here. *See Bunger v. Hartman,* 851 F. Supp. 461 (S.D.Fla.1994).

■ In addition, the state law claims alleged in the Amended Complaint, raise novel and complex issues of state statutes and county regulations. For example, whether § 376.313 alleged in Counts III and IV establishes a private cause of action has only been addressed by one Florida court which answered the question in the negative. *See Mostoufi v. Presto Food Stores, Inc.,* 618 So.2d 1372 (Fla. 2d DCA 1993). Diversified urges this Court to conduct what necessarily amounts to a de novo review of another sovereign's interpretation of its own law. In order to address its environmental concerns, Florida has enacted a complicated regulatory scheme that is essentially much broader and comprehensive than its federal counterpart. In a case such as this, where the issues hinge on the proper meaning and reach of state statutes and regulations, a federal court should decline to exercise jurisdiction in favor of the state interpreting its own law. *Berman Enterprises, Inc. v. Jorling,* 3 F.3d 602, 608 (2d Cir.1993); *White v. County of Newberry* 985 F.2d 168, 172 (4th Cir.1993) (citing *Burford v. Sun Oil Co.,* 319 U.S. 315, 326–34 (1943)).

Therefore, the undersigned concludes that supplemental jurisdiction should not be exercised over Counts III–VI in this case.

### RECOMMENDATION

Based on the foregoing, it is hereby RECOMMENDED as follows:

1. Defendant Simkins' *Motion to Dismiss* (D.E.28) be DENIED as to Counts I, II and VII and GRANTED as to Counts III, IV, V and VI.

2. Defendant Simkins' *Motion for Partial Summary Judgment* (D.E.28) be DENIED.

3. Plaintiff Diversified's *Motion for Partial Summary Judgment* (D.E.42) be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the parties may serve and file written objections with the Honorable Wilkie D. Ferguson, United States District Judge, within ten (10) days after being served with a copy of this Report and Recommendation. See *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982).