**In the Matter of John Paul JONES, Jr., Debtor.**

**United States of America, Plaintiff,**

**v.**

**John Paul Jones, Jr., Defendant.**

**Bankruptcy No. 01–55087 RFH.
Adversary No. 02–5025.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

April 23, 2004.

Valerie K. Mann, Environmental Enforcement Section, Environment and Natural Resources Division, United States Department of Justice, Washington, DC,

Bernard Snell, United States Attorney's Office, Macon, GA, for Plaintiff.

Robert K. Lovett, Matthew M. Myers, Macon, GA, for Defendant.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, JR., Chief Judge.

The United States of America, Plaintiff,[1] filed a motion for summary judgment on December 15, 2003. John Paul Jones, Jr., Defendant, filed a response on January 16, 2004. The Court, having considered the record and the arguments of counsel, now publishes this memorandum opinion.

Plaintiff contends that, as a matter of law, certain civil penalties imposed under the Clean Water Act[2] are nondischargeable under section 523(a)(7) of the Bankruptcy Code.

The following facts are not in dispute: Defendant is the majority shareholder in Bay Street Corporation. GC Quality Lubricants is a subsidiary of Bay Street. Defendant is the president of GC Quality Lubricants. Georgia–Carolina Oil Company is also a subsidiary of Bay Street. Georgia–Carolina Oil Company owns an oil processing facility. The Court will refer to Bay Street, GC Quality Lubricants, and Georgia–Carolina Oil Company collectively as the "oil companies."

Plaintiff initiated a cleanup of oil pollution at the oil processing facility. Plaintiff contends the costs for the cleanup totaled almost $2.6 million.

Plaintiff filed a civil action in federal district court seeking: (1) reimbursement of the cleanup costs of $2.6 million under

1. The United States of America filed this adversary proceeding on behalf of the United States Coast Guard and the United States Environmental Protection Agency.

2. The Clean Water Act is also known as the Federal Water Pollution Control Act Amendments of 1972 ("FWPCA"). *See, e.g., Loggerhead Turtle v. County Council of Volusia County, Florida,* 307 F.3d 1318, 1325 (11th Cir.2002).

the Oil Pollution Act, 33 U.S.C.A. § 2702; (2) civil penalties for the discharge of oil into a navigable water under the Clean Water Act, 33 U.S.C.A. § 1321(b)(7)(A); and (3) civil penalties for the failure to have a Spill Prevention Control and Countermeasures plan to prevent and control oil pollution under the Clean Water Act, 33 U.S.C.A. § 1321(b)(7)(C) and (j). The district court entered an order on June 4, 2003, which held that Defendant, as an individual, and the oil companies are liable for cleanup costs under the Oil Pollution Act and are also liable for civil penalties under the Clean Water Act. The district court has not determined the amount of the cleanup costs and civil penalties.[3]

▇ An order that establishes liability but leaves open the question of damages ordinarily is not a final order for purposes of preclusion.[4] In the pending motion for summary judgment, neither Plaintiff nor Defendant argues that this Court should delay ruling on the issue presented until the district court determines the amount of cleanup costs and civil penalties. The Court is persuaded that the issue presented is legal in nature as opposed to being a factual dispute. The Court is persuaded that the issue presented is appropriate for summary judgment because the Court will rule only on the issue of whether the civil penalties are dischargeable under the Bankruptcy Code.

Defendant filed a petition under Chapter 7 of the Bankruptcy Code on November 9, 2001. Plaintiff filed on February 4, 2002, an adversary proceeding contending that Defendant's obligations for civil penalties

are nondischargeable in bankruptcy. Plaintiff does not contend that Defendant's obligations for cleanup costs are nondischargeable.

Section 523(a)(7) of the Bankruptcy Code provides:

**§ 523.  Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition;

11 U.S.C.A. § 523(a)(7) (West 1993).

Defendant does not contend that the civil penalties at issue are tax penalties. Defendant does not dispute that the civil penalties are penalties payable to and for the benefit of a governmental unit. Defendant contends that the civil penalties are "compensation for actual pecuniary loss" and therefore are not excepted from discharge under section 523(a)(7).

"As for the reference to 'compensation for actual pecuniary loss,' the Senate Report indicates that the main purpose of

---

**3.** *United States v. Jones,* 267 F.Supp.2d 1349 (M.D.Ga.2003).

**4.** 18A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4432, p 57 (2002). *Contra Metromedia Co. v. Fugazy,* 983 F.2d 350, 366 (2nd Cir.1992), *cert denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662

(1993) ("The mere fact that the damages awarded to the plaintiff have not been yet calculated, though normally precluding an immediate appeal, does not prevent use of a final ruling on liability as collateral estoppel.").

this language was to prevent § 523(a)(7) from being applied to tax penalties. S. Rep No. 95–989, supra, at 79[, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5864–65]." *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216, 229 n. 13 (1986).

"The term 'actual pecuniary loss' clearly connotes measurable damages from particular instances of wrongdoing.... Moreover, it has been held that even if a penalty is based in part on measurable pecuniary loss, it will not be deemed compensation for such loss under 523(a)(7) if its primary purpose is penal." *Kish v. Farmer (In re Kish),* 238 B.R. 271, 285 (Bankr.D.N.J.1999).

The Clean Water Act provides in part:

§ 1321. Oil and hazardous substance liability

. . .

(b) Congressional declaration of policy against discharges of oil or hazardous substances; designation of hazardous substances; study of higher standard of care incentives and report to Congress; liability; penalties; civil actions; penalty limitations, separate offenses, jurisdiction, mitigation and damages and costs; recovery of removal costs; alternative remedies and withholding clearance of vessels

. . .

(7) Civil penalty action

(A) Discharge, generally

Any person who is the owner, operator, or person in charge of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation of paragraph (3), shall be subject to a civil penalty in an amount up to $25,000 per day of violation or an amount up to $1,000 per barrel of oil or unit of reportable quantity of hazardous substances discharged.

. . .

(C) Failure to comply with regulation

Any person who fails or refuses to comply with any regulation issued under subsection (j) of this section shall be subject to a civil penalty in an amount up to $25,000 per day of violation.

33 U.S.C.A. § 1321(b)(7)(A), (C) (West 2001).

Subsection 1321(j) requires in part that an oil facility have a Spill Prevention Control and Countermeasure plan to prevent oil pollution from occurring.

■■■■ "Civil liability under the CWA [Clean Water Act] is strict." *United States v. Jones,* 267 F.Supp.2d 1349, 1361 (2003). "[O]nce a violation has been established, some form of penalty is required.... Civil penalties are to be assessed .... as a matter of law." *Atlantic States Legal Foundation, Inc. v. Tyson Foods,* 897 F.2d 1128, 1142 (11th Cir.1990).

The Clean Water Act provides that the district court shall consider certain factors in determining the amount of the civil penalties. The civil penalties are deposited into the Oil Spill Liability Trust Fund. The Clean Water Act provides in part:

(8) Determination of amount

In determining the amount of a civil penalty under paragraphs (6) and (7), the Administrator, Secretary, or the court, as the case may be, shall consider the seriousness of the violation or violations, the economic benefit to the violator, if any, resulting from the violation, the degree of culpability involved, any other penalty for the same incident, any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the

violator, and any other matters as justice may require.

33 U.S.C.A. § 1321(b)(8) (West 2001).

### (s) Oil Spill Liability Trust Fund

The Oil Spill Liability Trust Fund established under section 9509 of Title 26 shall be available to carry out subsections (b), (c), (d), (j), and (*l*) of this section as those subsections apply to discharges, and substantial threats of discharges of oil. Any amounts received by the United States under this section shall be deposited in the Oil Spill Liability Trust Fund.

33 U.S.C.A. § 1321(s) (West 2001).

The Oil Spill Liability Trust Fund is financed in part from penalties assessed under § 1321(b). The Trust Fund is used in part to compensate the government for cleanup costs. *Berman Enterprises, Inc. v. Jorling,* 793 F.Supp. 408, 416 (E.D.N.Y. 1992); *aff'd* 3 F.3d 602 (2nd Cir.1993), *cert denied* 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994).

■ In determining whether a civil penalty is compensation for actual pecuniary loss, courts consider: (1) whether calculation of the penalty bears any relationship to the costs incurred by the government; (2) whether the penalty collected must be used to mitigate the particular damage caused by the violation; and (3) whether the government suffered any actual pecuniary loss. *Arizona v. Ott (In re Ott),* 218 B.R. 118, 122–23 (Bankr.W.D.Wash.1998); *Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet v. Seals,* 161 B.R. 615, 620–21 (W.D.Va.1993); *United States v. Lueking,* 125 B.R. 513, 516 (E.D.Tenn.1990). *See also, United States Dept. of Energy v. Seneca Oil Co. (In re Seneca Oil Co.),* 906 F.2d 1445, 1455–56 (10th Cir.1990).

In *United States v. WRW Corp.,*[5] civil penalties totaling $90,350 were assessed against the corporation's principals for serious violations of safety standards under the Federal Mine Safety and Health Act. The principals served prison sentences and paid criminal fines. The Sixth Circuit Court of Appeals held that the civil penalties were nondischargeable under section 523(a)(7) and stated in part:

> The defendants argue that the imposition of a civil penalty promotes the aims of retribution and deterrence, given the various factors used to determine the amount of the civil penalty. However, even though the application of these factors to a given case may result in a penalty which is punitive, we conclude that imposing a civil penalty for health and safety violations which varies in amount based upon the severity of the violation and the operator's attempts to come into immediate compliance may as readily be ascribed to the remedial purpose of promoting mine safety.

986 F.2d at 141–42.

The Government argues that the factors to be considered in assessing penalties under 30 U.S.C. § 820(i) [Federal Mine Safety and Health Act] do not relate to any party's pecuniary loss but rather indicate that the penalty is not compensation for actual pecuniary loss, a fact on which the district court relied.... In this case, the Government argues that the debt has a remedial, compensatory purpose because it results in rough repayment to the Government of prosecutorial and investigative expenses, but is not compensation for *actual* pecuniary loss because the size of the penalty is not derived from a showing of actual loss. Instead, the penalty amount is based upon factors which fo-

5. 986 F.2d 138 (6th Cir.1993).

cus on the Act's primary remedial purpose of promoting mine safety. There was no actual pecuniary loss to the Government in this case in the traditional sense, but only prosecutorial and investigative expenses.

We conclude that the penalty at issue is not compensation for actual pecuniary loss even though it is rationally related to the goal of making the Government whole by roughly compensating it for prosecutorial and investigative expenses. Concededly, this is a fine distinction. Had the size of the penalty been calculated according to proof of actual pecuniary loss, it would not be excepted from discharge under § 523(a)(7).

986 F.2d at 145 (emphasis original).

In *New Hampshire v. Tinkham* (*In re Tinkham*),[6] Tinkham dumped chemical wastes into the ground and ground waters. Tinkham was ordered to pay cleanup costs, criminal fines, and civil penalties. The bankruptcy court held that the criminal fines and civil penalties were nondischargeable, and stated in part:

With regard to the civil penalty of $670,000 imposed under the state court civil judgment, Tinkham again argues that that obligation is dischargeable here. As to this civil penalty, Tinkham's contention seems to be that the penalty was in reality a compensation for actual pecuniary loss within the meaning of § 523(a)(7). However, the record establishes that the jury in the civil action imposed the civil penalty under the enabling statute, RSA 149:19, which provides a maximum civil penalty of $10,000 per day for each day of violation for the discharge of waste without a required permit. The jury's civil verdict against Tinkham imposed a fine of $10,000 per day for 67 days of violation, totaling the $670,000 civil penalty in question. The jury by *another* special verdict granted judgment for the *actual* damages suffered by the State in terms of "amount of expenses that the State has incurred to date .... [and] .... the amount of expenses that the state will probably incur in the future" to a total amount of $11,357,000. It is obvious therefore that the additional $670,000 civil penalty was in fact a true "penalty" in the sense of "punishment" and not an attempt [to] reimburse a governmental unit for actual pecuniary loss. The court therefore in its order will likewise determine that the civil penalty in the amount of $670,000 is nondischargeable pursuant to Bankruptcy Code § 523(a)(7).

59 B.R. at 213 (emphasis original).

In *Tull v. United States*,[7] Tull, a real estate developer, dumped fill material into wetlands adjacent to navigable waters. The federal government sought, in part, civil penalties under the Clean Water Act, 33 U.S.C. § 1319(d). Tull demanded a jury trial both on liability and the amount of civil penalties. The United States Supreme Court held that Tull was entitled to a jury trial on liability but not on the amount of civil penalties. The Supreme Court stated in part:

Subsection (d) does not direct that the "civil penalty" imposed be calculated solely on the basis of equitable determinations, such as the profits gained from violations of the statute, but simply imposes a maximum penalty of $10,000 per day of violation. The legislative history of the Act reveals that Congress wanted the district court to consider the need for retribution and deterrence, in addition to restitution, when it imposed civil

6.   59 B.R. 209 (Bankr.D.N.H.1986).

7.   481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).

penalties.... A court can require retribution for wrongful conduct based on the seriousness of the violations, the number of prior violations, and the lack of good-faith efforts to comply with the relevant requirements. It may also seek to deter future violations by basing the penalty on its economic impact. Subsection 1319(d)'s authorization of punishment to further retribution and deterrence clearly evidences that this subsection reflects more than a concern to provide equitable relief....

107 S.Ct. at 1838.

The Government contends, however, that a suit enforcing civil penalties under the Clean Water Act is similar to an action for disgorgement of improper profits, traditionally considered an equitable remedy. It bases this characterization upon evidence that the District Court determined the amount of the penalties by multiplying the number of lots sold by petitioner by the profit earned per lot. An action for disgorgement of improper profits is, however, a poor analogy. Such an action is a remedy only for restitution—a more limited form of penalty than a civil fine. Restitution is limited to "restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant." As the above discussion indicates, however, § 1319(d)'s concerns are by no means limited to restoration of the status quo.

107 S.Ct. at 1839.

In *United States v. Atlantic Richfield Co.*,[8] an "accidental or faultless" oil spill occurred. The facility owner promptly reported and cleaned up the spill. The Coast Guard assessed a civil penalty under the Clean Water Act, 33 U.S.C.A. § 1321(b)(6). The facility owner objected

to the civil penalty. The district court enforced the penalty assessed by the Coast Guard and stated in part:

These cases raise issues concerning the proper construction and the constitutionality of the "civil penalty" provision of the oil and hazardous substance sections of the Federal Water Pollution Control Act Amendments of 1972 (FWPCA), § 1321(b)(6) of 33 U.S.C. §§ 1251 et seq. (Supp.1976). The constructional issues boil down to whether Congress intended to impose the civil penalty on persons who spill oil accidentally, report such spills to the appropriate authorities, and clean it up at their own expense....

429 F.Supp. at 832.

Congress, in the apparently plain language of § 1321(b)(3) and (6), mandated that the Coast Guard assess a "civil" penalty against any person who owns or operates a vessel or facility from which oil has been discharged in harmful quantities into the navigable waters. Congress created no exceptions or defenses to a(b)(6) suit other than denial that the elements of a violation had been proved....

429 F.Supp. at 835.

We find that defendants' argument makes most sense when translated into simple economic terms. A rational owner of an oil facility, recognizing his potential liabilities for clean ups under § 1321 (and for damages under common law damage remedies which § 1321 leaves untouched), will attempt to minimize the costs of spills. To accomplish this he will calculate the marginal costs of preventing spills and of potential liabilities. He will thereupon engage in prevention to the point where the marginal cost of prevention equals his mar-

8. 429 F.Supp. 830 (E.D.Pa.1977), aff'd 573     F.2d 1303 (3rd Cir.1978).

ginal liability for spills. Because that point defines reasonable spill prevention, a reasonable person will spend money for just that much prevention and no more. To spend less would be negligent. See *United States v. Carroll Towing Co.*, 159 F.2d 169 (2d Cir.1947); Posner, Economic Analysis of Law (1972). To spend more would be wasteful or inefficient. See Ackerman, Economic Foundations of Property Law, at xi-xiv (1975) (brief definition and analysis of efficiency).

On this basis we can make some sense of defendants' argument that (b)(6) serves no regulatory purpose when applied to "faultless" spillers. But defendants move from the claim that they were "faultless" to the claim that no regulatory purpose would be served by imposing a(b)(6) penalty, an argument we reject because it proceeds from a faulty premise. While it is true that the stipulated facts about the spills themselves would not be sufficient to support an action in negligence, this is not such an action, but rather an action to enforce a penalty.

The elements of this statutory action are only that defendant violated (b)(3) and that the Coast Guard following the appropriate procedure assessed the (b)(6) penalty. The statute does not make "fault" an element of the cause of the action, but rather a factor in the administrative penalty setting procedure. This is proper because there is no principle of law which requires that civil regulability through imposition of penalty be predicated upon a finding of fault. Moreover, a number of factors support civil regulability here in the absence of fault. First, as we explain more fully in our discussion of the Constitutional issues, infra, the principal goal of (b)(6) is

to deter spills. Second, the Congressional purpose here was to impose a standard of conduct higher than that related just to economic efficiency. Additionally, the Congress obviously believed:

(a) that no clean up effort could be complete because, after discharge, it is impossible to guarantee against residual harm from quantities of oil too small or too well dispersed to be detectable; and (b) that even the transitory pollution of waters was deleterious to the environment.

429 F.Supp. at 835.

In the view of the foregoing analysis we must reject defendant's contention that, as applied to accidental, reporting, self-cleaners, (b)(6) is really criminal rather than civil because, (1) the statutory language is not ambiguous; and (2) even where defendants are not at fault, the penalty does not act only as a punishment but serves the ends of civil regulation.

429 F.Supp. at 836.

Defendant relies upon *Whitehouse v. LaRoche.*[9] In that case, the State of Rhode Island filed a complaint in federal district court contending that LaRoche had violated the Clean Water Act and state water pollution acts. Certain creditors filed an involuntary Chapter 11 bankruptcy proceeding against LaRoche. In the district court action, the district court entered a consent decree in which LaRoche agreed to reimburse the state for any "shortfall amount" for the costs of a new water treatment facility.

The state, in the bankruptcy proceeding, contended that LaRoche's obligation was nondischargeable under section 523(a)(7). The First Circuit Court of Appeals held

9. 277 F.3d 568 (1st Cir.2002).

that LaRoche's obligation under the consent decree was enforceable and dispositive of the nondischargeable issue. The circuit court stated in part:

> Although Bankruptcy Code § 523(a)(7) applies to both civil *and* criminal penalties, in order to qualify for a dischargeability exception under subsections 523(a)(7), normally the particular penalty must serve some "punitive" or "rehabilitative" governmental aim, rather than a purely compensatory purpose.
>
> Appellants contend that these civil penalties, imposed pursuant to Rhode Island law, *see* R.I. Gen. Laws § 46-12–13, were designed to deter and remediate environmental contamination, a particularly important governmental function implemented under the States's police and regulatory powers. Moreover, appellants argue, LaRoche potentially was exposed to fines up to $25,000 per day, a sum which bears neither any obvious nor essential correlation to the amount needed to compensate the State for its actual response costs.
>
> On the other hand, there can be no question but that the *consent decree itself explicitly equates the amount of these civil penalties with the "shortfall amount,"* which in turn plainly was designed to reimburse the State for the *actual losses,* neither more nor less. Appellants respond, however, that their decision to calculate the punitive fines under that convenient methodology cannot deprive these civil penalties of their "punitive" nature. We need not resolve these issues, however, since the

CWA/RIWPCA consent decree itself disposes of the contention that appellants' claim is excepted from discharge under Bankruptcy Code § 523(a)(7).

277 F.3d at 573–74 (emphasis original).

Turning to the case at bar, in the district court action, Plaintiff seeks civil penalties under two subsections of the Clean Water Act. First, the district court has determined that Defendant failed to have a Spill Prevention Control and Countermeasures plan to prevent and control oil pollution.

"The regulations impose a duty to have a SPCC plan whether there is an oil spill or not. The point of the SPCC is to be prophylactic—to prevent oil discharges to navigable waters." *Pepperell Assoc. v. United States Environmental Protection Agency,* 246 F.3d 15, 24 (1st Cir.2001).

■ The Clean Water Act provides that Defendant shall be subject to a civil penalty up to $25,000 per day for violation of the SPCC regulation.[10] Defendant is subject to this penalty even though no oil spill occurs and even though the government may incur no clean up cost. The penalty collected is not required to be used to mitigate the damages of a particular violation. The Court is persuaded that the civil penalty for failing to have a SPCC plan is not compensation for actual pecuniary loss.

■ Second, the district court determined that Defendant is responsible for the discharge of oil into a navigable water. The Clean Water Act provides that Defendant shall be subject to a civil penalty up to $25,000 per day for the violation.[11] The Clean Water Act lists seven non-exclusive factors the district court shall consider in

10. The civil penalty is increased to $27,500 per day for violations after January 30, 1997, but before August 1, 2002. *Jones,* 267 F.Supp.2d at 1362.

11. 33 U.S.C.A. § 1321(b)(7)(A). The civil penalty is increased to $27,500 per day for violations after January 30, 1997, but before August 19, 2002. *Jones,* 267 F.Supp.2d at 1361.

determining the amount of the civil penalty. The cost of clean up is not a listed factor.[12] Plaintiff is seeking reimbursement of the cleanup costs under the Oil Pollution Act, 33 U.S.C.A. 2702. The penalty collected is not required to be used to mitigate the damages of a particular violation. The Court is persuaded that the civil penalty for violation of the Clean Water Act by discharging oil into a navigable water is not compensation for actual pecuniary loss.

Thus, the Court is persuaded that the civil penalties under both subsections of the Clean Water Act are nondischargeable in bankruptcy.

Defendant also contends that he "is entitled to apportionment of the penalty amongst all responsible parties pursuant to the 'Gore Factors' found in *BMW of North America, Inc.v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)." Defendant's Response To Plaintiff's Motion For Summary Judgment That Jones's Clean Water Act Penalty Debt Is Not Dischargeable, p. 2 (filed Jan. 16, 2004) Docket No. 21.

The Court is persuaded that the issue of apportionment of the civil penalties is for the district court. The only issue that this Court is ruling upon is the issue of dischargeability.

An order in accordance with this memorandum opinion shall be entered this date.

---

**12.** 33 U.S.C.A. § 1321(b)(8) (West 2001)(the *district court is also to consider "any other* matters as justice may require.").